572 S.W.2d 929 (1978)
In re ADOPTION OF Sheila Renae DEARING, a minor.
Frank John ADCOCK, III and Sheila Anne Adcock, Petitioners-Appellants,
v.
Norman SALIBA, Respondent-Appellant.
Court of Appeals of Tennessee, Western Section.
August 10, 1978.
Certiorari Denied October 30, 1978.
*930 Jim S. Umstead, Jr., Memphis, for petitioners-appellants.
Charles H. Beaty, Gallatin, for respondent-appellant.
Certiorari Denied by Supreme Court October 30, 1978.
NEARN, Judge.
This appeal is from a decree of adoption. The matter is before us on the technical record only.
The technical record reveals that the minor child was born out of wedlock September 3, 1970, to Sheila Anne Adcock (then Dearing) and Norman Saliba. On December 11, 1976, the mother married Frank John Adcock, III and it was the desire of the stepfather Adcock and the mother that the child be adopted by Adcock. The mother joined in the petition to give consent. The petition was filed on December 13, 1976, or two days after the marriage. The petition also alleged that the natural father, Norman Saliba, had previously filed (about six months prior to the adoption suit) a petition in the Circuit Court of Sumner County (the county of his residence) to legitimate the minor child. The Adcocks sought to enjoin any further prosecution of the legitimation petition by Saliba. The Chancellor temporarily enjoined the Sumner County proceedings.
After hearing the proof the Chancellor entered the following final decree:
"This cause came on to be heard before the Honorable George T. Lewis, Jr., Chancellor of Part III of the Chancery Court of Shelby County, Tennessee, upon the original sworn petition of Frank John Adcock, III and Sheila Anne Adcock, husband and wife, respectively, for the adoption of Sheila Renae Dearing, a minor, filed on the 13th day of December, 1976, the answer of Respondent, Norman Saliba, the confidential reports and answer of the Tennessee Department of Human Services neither giving or withholding its consent to the adoption, filed pursuant to an Order of reference heretofore *931 entered, the testimony of Petitioners, Respondent, and witnesses in open Court, and upon the entire record in the cause.
"From all of which it appears to the Court that all necessary parties are properly before the Court.
"It further appears to the Court that the name of the child used in this proceeding is Sheila Renae Dearing; that the Petitioner, Frank John Adcock, III and Co-petitioner, Sheila Anne Adcock, natural parent of said minor, are adult resident citizens of Memphis, Shelby County, Tennessee and have been for more than one year next preceding the filing of the petition in this cause.
"It further appears that the Petitioner, Frank John Adcock, III, acquired custody of the said child, Sheila Renae Dearing, upon his marriage to Sheila Anne Adcock on December 11, 1976 and has had the care and custody of said child continuously since said date; and that proper consent as required by law has been given by the natural mother and Co-petitioner, Sheila Anne Adcock, who joined in the petition for adoption for the purpose of consenting to the adoption by Frank John Adcock, III, Petitioner herein.
"It further appears to the Court that Respondent, Norman Saliba, the natural father of said minor child, who was born out of wedlock did not consent to the adoption but presented proof in open Court regarding the best interests of said child pursuant to T.C.A. 36-111.
"It further appears to the Court that the Petitioner, Frank John Adcock, III, is a fit person, together with Sheila Anne Adcock, natural mother of said child, to have the care and custody of said minor child, Sheila Renae Dearing; that the Petitioners are financially able to provide for said child; that the said child is suitable for adoption and that the adoption is for the best interests of said child.
"It further appears to the Court that good cause exists to waive the entry of an interlocutory decree and the probationary period in this cause, the said minor child being the step-child of the Petitioner, Frank John Adcock, III.
"It further appears to the Court that Dr. Norman Saliba contributed to the natural mother of the child, approximately, $3,500.00 and a new Plymouth automobile at the time in the approximate value of $3,500.00 and furnished documentary evidence of a trust fund for the benefit of Sheila Renae Dearing in the amount of approximately $4,800.00, said contributions from the natural father being in excess of $11,000.00, and the Court believing the child to be a ward of the Court pursuant to Section 36-106(k) Tennessee Code Annotated and that the natural father's right of visitation should not be cut off because of his contributions to the natural mother and child.
"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the adoption prayed for herein, be and the same is hereby granted and the relationship of parent and child be and the same is hereby established between the Frank John Adcock, III and Sheila Anne Adcock, and said minor child, Sheila Renae Dearing, as though said child had been born to them in lawful wedlock, and the inheritance rights of all parties are hereby adjudged in accordance with the Laws of the State of Tennessee.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the name of the child be and it is hereby legally changed to Sheila Renae Adcock, as prayed for in the petition.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court, that the Respondent, Norman Saliba, be allowed reasonable visitation privileges with said child as follows:
3:00 p.m. December 27, 1977 through 3:00 p.m. December 30, 1977; 3:00 p.m. March 17, 1978 through 3:00 p.m. March 20, 1978; 3:00 p.m. June 2, 1978 through 3:00 p.m. June 6, 1978; and 3:00 p.m. August 19, 1978 through 3:00 p.m. August 22, 1978.
"The foregoing visitation dates may be changed by mutual consent between the petitioners and the respondent, and shall *932 be changed when such dates interfere with the normal school year of the minor ward, and shall continue an equivalent length of time in future years so long as respondent makes contributions to the minor ward of the Court in an amount equivalent to $300.00 per month, which contributions may be payable to the natural mother directly, or may be set up in an irrevocable trust for the benefit of said minor.
"The costs of this cause are adjudged against the petitioners, for which let execution issue."
Both the Adcocks and Saliba appeal. The Adcocks charge the Chancellor with error in holding the child to be a ward of the Court and in granting visitation privileges to Saliba. Defendant Saliba charges the Chancellor with error in enjoining the legitimation proceedings and in granting the adoption.
We will consider the thrust of both appeals simultaneously.
We do not believe the Chancellor erred in enjoining prosecution of the legitimation suit in Sumner County, but we do believe he erred in not first deciding that suit before hearing the adoption petition.
Section 36-106 T.C.A. in part provides, "When the petition to adopt is filed, the child sought to be adopted shall become a ward of the court and the court shall have jurisdiction of all matters pertaining to the child." (Emphasis ours) Therefore, in order to avoid a multiplicity of suits over the minor child, the Chancellor should have taken jurisdiction of the legitimation petition and heard it before hearing the adoption. The legitimation petition cannot be ignored, for the adoption procedure is dependent upon its outcome. As may be seen from the final decree entered, the putative father was not permitted to contest the adoption in regard to his consent or lack of it. He was permitted only the narrow latitude provided by T.C.A. § 36-111[1] regarding proof. However, that latitude is narrowed only when the putative father has not legitimated the child prior to the natural mother's written consent. Otherwise, the putative father would be allowed to withhold consent. In this case the Chancellor, in allowing the adoption, considered the mother's consent sufficient and prevented and restrained the putative father by fiat from attempting to attain a statutory right to withhold consent.
It might be argued that since the Chancellor granted the adoption and allowed the father to present proof only as to the best interest of the child, it could be safely concluded that, by implication, the Court considered and denied the petition for legitimation. Of course, the record facially makes no such implication, but from what it does show, that implication is negated. We say this because the Chancellor granted the adoption and, at the same time, enigmatically granted visitation rights to the putative father so long as he paid child support. T.C.A. § 36-126 provides that the final order of adoption "establishes from that date the relationship of parent and child between the adoptive parents and the adopted child as if the adopted child had been born to the adoptive parents in lawful wedlock". T.C.A. § 36-127 provides that "the adoptive parents shall not thereafter be deprived of any rights in the child, at the insistence of the natural parents or otherwise". The result contemplated by statute is that when an adoption is granted the natural parent(s) is reduced to the role of a complete stranger and has no rights, parental, visitation or other insofar as the child is concerned. Grider v. Grider (1945) 182 Tenn. 406, 187 *933 S.W.2d 613; Rogers v. Baldridge (1934 M.S.) 18 Tenn. App. 300, 76 S.W.2d 655; Wilder v. Aetna Casualty and Surety Company (1972 Tenn.) 477 S.W.2d 1.
We hold that a final decree of adoption which affirmatively denies to the adoptive parents the same custody and control of the child possessed of natural parents and grants visitation rights to the natural parents is not only violative of the letter of the law embodied in the statutes heretofore mentioned, but is also violative of the primary purpose of the chapter as set forth in the first paragraph of T.C.A. § 36-101.[2]
Counsel for the putative father strenuously argues that T.C.A. § 36-111 is violative of the Fourth and Fourth Amendment provisions of the U.S. Constitution and equal protection of the Constitution of the United States in that it deprives the natural father who has not abandoned his child the right to withhold consent to an adoption and permits the natural mother to waive that right for him. We do not reach the U.S. constitutional issues, or for that matter Tennessee constitutional issues, because the operation of T.C.A. § 36-111 is dependent upon the outcome of the petition for legitimation. This is one of the reasons we are of the opinion that the legitimation petition should have been first acted upon by the Chancellor.
The result is that Saliba's first Assignment of Error, insofar as it complains of a failure to first dispose of the legitimation petition, is sustained. Insofar as it complains of a failure to have the Circuit Court of Sumner County dispose of the petition, it is overruled. We do not reach Saliba's second Assignment of Error regarding the constitutionality of T.C.A. § 36-111.
The Adcock Assignments of Error I and II which fault the Chancellor for granting a final petition for adoption and at the same time awarding the putative father visitation privileges and holding the child to be a continuing ward of the Court are sustained. We do not consider the third Assignment of Error as a proper treatment of it would require a Bill of Exceptions.
Since positive errors of law appear on the face of the technical record we must reverse and set aside the decree of adoption and remand for consideration by the Chancellor of first, the legitimation petition, and then, any further proceedings that may be necessary.
All costs below will await the discretion of the Chancellor after the hearing on remand and costs of appeal are to be adjudged equally between the Adcocks and Saliba.
Done at Jackson in the two hundred and third year of our Independence and in the one hundred and eighty-third year of our Statehood.
MATHERNE and SUMMERS, JJ., concur.
NOTES
[1] "36-111. Children born out of wedlock  Consent of mother  Notice to father  Exceptions.  In the case of a child born out of wedlock and when said child has not been legitimated prior to the time of the signing of the consent, the written consent of the mother shall be sufficient under this chapter provided, however, the natural father shall be given written notice of the proposed adoption in either a separate proceeding or in the adoption proceeding and shall be given the opportunity to present proof as to the best interests of the child. Notice need not be given to the natural father whenever he has consented to the adoption or has been found to have abandoned the child under the provisions of this chapter or chapter 2 of title 37."
[2] "36-101. Purpose of chapter  Construction.  The primary purpose of this chapter is to protect children from unnecessary separation from parents who might give them good homes and loving care, to protect them from adoption by persons unfit to have the responsibility of their care and rearing, and to protect them from interference, long after they have become properly adjusted to their adoptive homes by natural parents who may have some legal claim because of a defect in the adoption procedure."