170 N.J. Super. 419 (1979)
406 A.2d 986
IN THE MATTER OF THE ADOPTION OF CHILDREN BY F.
Superior Court of New Jersey, Chancery Division Probate Part.
Decided September 23, 1979.
*420 Mr. Franklin J. Riesenburger for plaintiff (Messrs. Greenblatt and Greenblatt, attorneys).
Mr. Gerald R. Spall, for natural father D.W. (Messrs. Lipman, Antonelli, Batt & Dunlap, attorneys).
KLEINER, J.S.C.
The unique facts of this case raise the question whether this court may grant a judgment of adoption to plaintiff stepfather and incorporate within said judgment an order for visitation *421 privileges between the natural father (who consents to the adoption) and his two daughters whose adoption is sought by plaintiff. The question posed is of first impression requiring an interpretation of our recently enacted revised laws of adoption. L. 1977, c. 367; N.J.S.A. 9:3-37 et seq.
The case at bar involves a complaint for adoption of plaintiff's two stepdaughters, ages 11 and 9. The children's natural father, D., has filed an answer setting forth a conditional consent to plaintiff's request for adoption. The nature of this condition, simply stated, is that this court permit the adoption but preserve, by judicial decree, unto his daughters, an independent enforceable right, at their sole and exclusive option, to visit their natural father.
The factual history of the relationship of the parties serves as a basis for the relief sought.
D. and his former wife, L. (now Mrs. F.), originally resided in Alaska. Subsequent to their separation D. instituted divorce proceedings, and during the pendency of that action, and without prior notice, L. and the two children of the marriage left Alaska and established a residence at an undisclosed location in New Jersey.
In 1973 the Alaska court granted a judgment of divorce, imposed a support obligation upon D. and granted him general visitation privileges with his children. Shortly thereafter D. established a new residence in Minnesota.
In May 1973 L. instituted an action in New Jersey under the Uniform Reciprocal Support Act, and the Minnesota court reaffirmed D.'s obligation to provide support but specifically conditioned the same upon L.'s willingness to abide by an order granting D. visitation privileges.
Initially D. complied with the order of support; however, when L. again moved to an undisclosed address in New Jersey, he discontinued providing child support.
*422 In 1978 D., through the assistance of the public agencies in Minnesota and New Jersey, finally located his former wife and learned of her remarriage to the plaintiff F. He again petitioned the Minnesota court for relief and the natural mother, now Mrs. F., was personally served in New Jersey and fully participated through counsel in the Minnesota proceedings. The Minnesota court expunged all arrears that had accrued respecting child support and again conditioned future child support payments on Mrs. F.'s willingness to afford D. visitation with his daughters.
In March 1979 the natural father, without prior contact or announcement, traveled from Minnesota to New Jersey, located Mrs. F. and plaintiff F., and visited his children at the home of his former wife and plaintiff.
Subsequent to this successful visit the two children, whose adoption is now sought, began to communicate with their natural father and his immediate family in Minnesota.
This adoption proceeding was filed subsequent to the referred-to visit and the rekindled relationship of the natural father, D., and his daughters. This matter is therefore controlled by N.J.S.A. 9:3-37 et seq., which repealed N.J.S.A. 9:3-17 to 36.
Our recently revised adoption laws require that the act be "liberally construed to the end that the best interests of children be promoted. Due regard shall be given to the rights of all persons affected by an adoption." N.J.S.A. 9:3-37.
The mandate of N.J.S.A. 9:3-37 must be read in pari materia with the dictates of N.J.S.A. 9:3-50(a), which provides, in part:
* * * when the plaintiff is a stepfather or stepmother of the adopted child and the adoption is consummated with the consent and approval of the mother or father, respectively, such adoption shall not affect or terminate any relationship between the child and such mother or father or any rights, duties or obligations based thereupon.
As in the predecessor statute, N.J.S.A. 9:3-30, N.J.S.A. 9:3-50 is primarily designed to protect adoptive parents from post-adoption disruptions in their relationship with adopted children, by natural parents who have surrendered children for *423 adoption or where parental rights have been judicially severed. Mimkon v. Ford, 66 N.J. 426 (1975).
Our case law does not, either under our prior, more strictly construed adoption act, or since the repeal thereof, L. 1977, c. 367; N.J.S.A. 9:3-37, specifically define those "relationships", if any, between the child and his non-custodial natural parent, who has consented to a stepparent adoption, which are not terminated by the adoption. N.J.S.A. 9:3-50(a).
The adoption act, as presently enacted pursuant to the directive of N.J.S.A. 9:3-49, requires the appearance of a child over ten years of age at the adoption hearing, and the child's views respecting the adoption must be solicited and given consideration.
In the case at bar, both children, who are the parties primarily affected by the judicial relief sought, were interviewed by the court. Both daughters expressed love and affection for their stepfather, both desire that the adoption be approved, and both expressed a willingness to have their surname changed. N.J.S.A. 9:3-52. However, both children also indicated they would prefer that the court permit them to continue to visit their natural father, particularly on occasions in the future when they travel to Minnesota to visit their maternal grandmother, who resides near their natural father. Each child separately demonstrated a capacity to express an intelligent preference, and the childrens' expressed desire should be reasonably considered by this court. N.J.S.A. 9:3-49.
This court is not unmindful of Mills v. Atlantic City Vital Statistics Dep't, 148 N.J. Super. 302 (Ch.Div. 1977), in which the court discussed and recognized the existence of a psychological need of many adult adoptees to know facts of their parentage. Clearly, a similar psychological need must be recognized with children who know their natural parent where consent to a stepparent adoption is granted and where the child already maintains a viable relationship with the natural parent.
*424 Two recent decisions prior to the passage of N.J.S.A. 9:3-37 illustrate our courts' willingness to liberally construe our adoption statutes to give effect to the rights and privileges of all persons affected by an adoption proceeding.
In Kattermann v. Di Piazza, 151 N.J. Super. 209 (App.Div. 1977), a natural mother in a post-adoption proceeding was granted visitation privileges with her son subsequent to an adoption by her own parents, the child's maternal grandparents. The Appellate Division recognized that to deny the post-adoption visitation request would "deny the child access to the love and affection of his natural mother in the absence of a determination that is in the best interests of the child to do so." Id. at 214.
In re Adoption by A.R., 152 N.J. Super. 541 (Probate Div. 1977), the court, in order to preserve a relationship between an incompetent natural mother and her child whose adoption was sought by his acknowledged natural father, where consent to the adoption was granted by the incompetent's guardian, stated:
An additional problem is presented by this unique state of facts * * * if this adoption is granted, the rights of the mother will not be preserved under N.J.S.A. 9:3-30(A), since plaintiff's not a "stepfather [adopting with the] approval of the mother. * * *" These statutes, however, must be read against the peculiar factual setting of this case, and with an application of common sense.... Therefore, this court will interpret the term "stepfather" as including an acknowledged natural father and thus preserve the rights and relationship between the child and his mother. [at 545.]
Although the court in A.R. did not define what rights and relationship between a natural parent and a child about to be adopted were being preserved, the decision was subsequent to both Mills v. Atlantic City Vital Statistics Dep't, and Kattermann v. Di Piazza, both supra, and presumably the probate court in A.R. recognized both the psychological need to know one's natural parent and the parental right to visit with one's natural child after a consensual adoption.
The existence of consent to an adoption here, the existence of a present viable relationship between the natural father, *425 D., and the children to be adopted, and the prior conduct on the part of the natural mother, L., who frustrated the ability of the natural father to maintain a relationship with his children in the past, remove this case from the mandate of N.J.S.A. 9:3-50(a) where all rights and relationships are terminated between a nonconsenting natural parent and a natural child upon adoption. In re Adoption by D., 61 N.J. 89 (1972); In re Lone, 134 N.J. Super. 213 (Law Div. 1975); In re P. and Wife, 114 N.J. Super. 584 (App.Div. 1971).
While it may be unprecedented in New Jersey for an order of visitation to be specifically incorporated within a judgment of adoption by a stepparent, other jurisdictions have recognized this possible relief.
In New York, for example, In re Adoption of N., 78 Misc.2d 105, 355 N.Y.S.2d 956 (Surr.Ct. 1974), the court recognized its equitable jurisdiction to award a natural father visitation rights as an adjunct to a stepparent adoption; in In Matter of Abraham L., 53 A.D.2d 669, 385 N.Y.S.2d 103 (Sup.Ct. 1976), the court declared that the surrogate had jurisdiction to grant a visitation order within an adoption decree, and in In Matter of Gerald G., 61 A.D.2d 521, 403 N.Y.S.2d 57 (Sup.Ct. 1978), the court declared that a best interest of the child standard would apply to the grant or denial of visitation privileges to a natural parent subsequent to adoption.
In the case at bar the natural father does not seek unlimited visitation with his daughters. He only seeks to maintain contact with his daughters if his daughters elect and desire to visit with him and his new family. He seeks judicial relief which will resolve the rights of his children in one proceeding and to afford his daughters a forum in which they may, independent of their natural mother or adoptive father, enforce their right to contact and visit their natural father.
Based upon the testimony of the parties, this court finds that the best interests of these children will be promoted by granting *426 unto the two children an independent privilege to visit, at their option, and to maintain contact with their natural father. Future litigation will be avoided. Cf. Kattermann v. Di Piazza, supra.
Accordingly, a guardian ad litem will be appointed by this court whom the children may contact to enforce this right, should their natural mother or adoptive father attempt in the future to frustrate their attempt to maintain a relationship with their natural father. R. 4:26-2(b)(4).
The judgment of adoption to be submitted by plaintiff's counsel shall be prepared pursuant to this opinion and shall provide for the designation of a guardian ad litem whose name shall be supplied upon the execution of said judgment.