**In the Matter of S.A.H., Alleged Dependent Child.**

**No. 13426.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 8, 1981.

Decided Jan. 13, 1982.

Janice Godtland, Asst. Atty. Gen., Pierre, for appellee State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Clair R. Gerry, Sioux Falls, for appellee S.A.H.

Richard Braithwaite, Sioux Falls, for appellant mother.

## PER CURIAM.

This is an appeal from a decree of disposition terminating the parental rights of R.H. We affirm.

In 1977, R.H. voluntarily placed her four-year old daughter, S.A.H., in a foster home. In 1978, the Department of Social Services was appointed guardian of S.A.H. The proceedings resulting in the termination of R.H.'s parental rights began in 1980 and alleged that R.H. "failed to provide proper parental care through her actions or omissions or has failed or refused to provide proper or necessary subsistence, education, medical care or any other care necessary for S's health, guidance or well-being."

■ R.H. argues that the finding of dependency based upon these grounds cannot be supported by evidence in the record because R.H. did not have physical custody of S.A.H. and consequently, did not have parental responsibility during that period. In *Matter of C.E. and D.E.*, 283 N.W.2d 554 (S.D.1979), the State alleged that the children lacked proper care and this Court said that

evidence presented regarding occurrences after the removal of the children was 'relevant to the question of [the parents'] continuing behavior and attitudes. Furthermore, a reasonable inference is raised that [the parents'] present behavior is similar to past action and admission of such evidence is not error.' [*In re N.J.W.*,] 273 N.W.2d [134] at 138 (citation omitted).

The findings of the trial court in the case at bar relate to appellant's actions and habits. As we said in the *N.J.W.* case, supra, 'even though the children were not in [the parents'] custody, the evidence can go to support a showing of a continuous pattern of life style extending back during their custody.' 273 N.W.2d at 138.

283 N.W.2d at 556.

R.H. also argues that the termination of her parental rights was not the least restrictive means of providing for the best interests and welfare of S.A.H. She believes that a continuation of foster care for S.A.H. and Social Services assistance for herself will be in S.A.H.'s best interests.

The record reveals that R.H. is a thirty-year old woman with limited intelligence. Because of her difficult living conditions and the opportunity to obtain vocational education, R.H. voluntarily placed S.A.H. in foster care.

Throughout the years leading to the termination of her parental rights, R.H. failed to maintain independent living, steady employment or regular visitation with S.A.H. Social agencies and the Department of Social Services attempted to assist R.H. with money management, vocational training, and parenting skills, but met with an unwillingness to accept their assistance. At the time of the dispositional hearing, R.H. had no apartment of her own, no money and no job.

R.H. showed little interest in S.A.H.'s schooling, progress or health, although encouraged to do so by the foster mother. While in foster care, S.A.H. was transformed from a difficult child, prone to tantrums, to a well-behaved little girl.

■■ After a review of the entire evidence, we are not left with a definite and firm conviction that a mistake has been committed by terminating R.H.'s parental rights. *Matter of B.A.M.*, 290 N.W.2d 498 (S.D.1980). While the fundamental nature of parents' rights to their children mandates at least a reasonable effort to aid the parents, *Matter of R.Z.F.*, 284 N.W.2d 879 (S.D. 1979), termination of parental rights is justified where attempts to assist a parent in providing better care for the child are unsuccessful. *Matter of R.Z.F.*, supra; *Matter of C.E. and D.E.*, supra. In this case, the termination of R.H.'s parental rights was in S.A.H.'s best interest.

The judgment is affirmed.