**In the Matter of C.O.W., P.W., Appellant.**

No. 85–274.

District of Columbia Court of Appeals.

Argued Nov. 3, 1986.
Decided Jan. 15, 1987.

Daryl Waldman, Law Student, with whom Ann Shalleck was on brief, for appellant.

Marion E. Baurley, Washington, D.C., with whom Gregory Lensbower, and H. Henning Vent, were on brief, for appellee.

Before NEWMAN and STEADMAN, Associate Judges, and GALLAGHER, Senior Judge.

STEADMAN, Associate Judge:

P.W., mother of C.O.W., challenges the termination of her parental rights. On appeal, her main contention is that the Code's parental termination provision, D.C. Code § 16–2353(b) (1981), violates constitutional due process by permitting consideration of the child's relationship with its foster parents. Finding no constitutional infirmities or other errors,[1] we affirm.

## I.

C.O.W. was born in 1975. Due to inadequate supervision from her mother, she was sexually abused by an unknown person or persons from whom C.O.W. contracted gonorrhea at the age of 4½. The mother, appellant P.W., signed a stipulation conceding that C.O.W. was a neglected child and as a result C.O.W. was committed to the custody of the Department of Human Services in August 1980. P.W. agreed to undergo counseling as a condition of regaining custody. C.O.W.'s placement

---

1. Appellant also advances two additional claims of error. First, she alleges that the trial court relied on the availability of an "open adoption" in which the natural mother would retain legal right to visitation, an option not permitted by the D.C.Code. Although the judge makes reference to "open" adoption in his findings, the record is clear that he was aware that termination extinguishes all rights, including visitation, and thus was referring to the fact that the child knows her natural mother and that contact between them should voluntarily be encouraged. Second, appellant contends that the trial court erred when it failed to record the testimony of the child during an in camera interview. Neither appellant nor the guardian objected at trial to this procedure; therefore, the objection was waived.

was regularly reviewed and extended. C.O.W. lived in her first foster home for 3½ years where she developed a warm and loving relationship with her foster parents. Upon retirement of this first foster family in 1983, C.O.W. was placed with a new foster parent with a plan that this placement would be a permanent adoptive home. She continues to reside in this home.

In his findings of fact, after a termination hearing in early 1985, the trial judge first focused on the child. He found that C.O.W. suffered severe emotional harm from the sexual abuse. Since being placed in foster care, she has improved significantly with the help of intensive psychological counseling and the benefit of home environments where she has been able to feel safe and protected. However, she will continue to need therapy for the forseeable future. At home, she needs a secure environment where limits are set and parent-child roles are clearly defined, with a parent who understands her special problems.

The trial court then made detailed findings about appellant and her relationship with C.O.W. First, although ordered to undergo therapy as a prerequisite to the return of the child, she was originally very resistant. In 1983, when she fully realized that C.O.W. would not be returned unless she attended regular counseling, she began to go consistently. The court did find that P.W. had made significant progress over the past 18 months. However, parent and child roles are blurred, with C.O.W. at times seeing herself psychologically as her mother's sister or even mother. P.W. is unable, due to her own psychological and emotional limitations, to satisfactorily

mother the respondent. In addition, the court found that P.W. is still in need of continued therapy and is far from understanding C.O.W.'s problems. In particular, she lacks insight into the sexual abuse of C.O.W. in 1980, not fully accepting that the child was abused or that the medical diagnosis of gonorrhea was correct. She does not understand that the child still suffers from the traumatic effects of the sexual abuse. Only after this analysis did the trial court turn to the foster home. He found that the current foster home would provide well for the child's needs and that without a termination and subsequent adoption at this point, there would be the necessity of yet another foster home as the current foster parent did not want to be a permanent foster parent. Another move, however, he determined could seriously thwart the child's psychological and emotional growth. Based on these findings, the trial court determined by clear and convincing evidence that the best interests of the child dictated that P.W.'s parental rights be terminated after almost five years of Department of Human Services custody.

## II.

■ Appellant argues that D.C.Code § 16–2353(b)[2] violates the due process clause of the Fifth Amendment by permitting a comparison between the natural parent and the foster parent in determining whether parental rights should be terminated. On its face, however, § 16–2353(b) does no such thing. All persons involved with the child are to be considered in rela-

---

2. D.C.Code § 16–2353(b) states:
   (b) In determining whether it is in the child's best interests that the parent and child relationship be terminated, a judge shall consider each of the following factors:
   (1) The child's need for continuity of care and caretakers and for timely integration into a stable and permanent home, taking into account the differences in the development and the concept of time of children of different ages;

(2) the physical, mental and emotional health of all individuals involved to the degree that such affects the welfare of the child, the decisive consideration being the physical, mental and emotional needs of the child;
(3) the quality of the interaction and interrelationship of the child with his or her parent, siblings, relative and/or caretakers, including the foster parent; and
(4) to the extent feasible, the child's opinion of his or her own best interests in the matter.

tionship to the best interests of the child, not in comparison to one another. Later, in her brief and at oral argument, appellant actually made two more subtle and distinct arguments. First, appellant contends that § 16–2353(b) is facially unconstitutional because only the fitness of the parent should be considered at the termination hearing. Thus, appellant argues, any statutory reference to persons or relationships other than the natural parent, such as a foster parent, does not represent the most narrowly tailored means required when a fundamental interest is at stake. In prior cases, we have effectively rejected such an argument. In *In re J.S.R.*, 374 A.2d 860 (D.C.1977), we held that the "best interests of the child" standard did not offend the constitutional rights of natural parents. Furthermore, *In re K.A.*, 484 A.2d 992 (D.C.1984), held that under the statutory test, a finding of parental unfitness was not required by the due process clause of the Fifth Amendment.[3] Also, as we made clear in *In re M.M.M.*, 485 A.2d 180 (D.C. 1984), the trial court is not obligated to consider the parent's interests in isolation from the interests of the child. Therefore, we conclude that insofar as the child's relationships with persons other than the natural parent are important in determining whether termination is required and if so, what its effects might be, statutory consideration of such relationships is constitutional.

Second, appellant nevertheless argues that despite the label of "best interests of the child," inclusion of the foster family's relationship with the child inevitably invites a comparison of the natural parent and foster family in which the natural parent will always fall short. Appellant suggests that ideally, if a child is in need of foster care, she will be placed in an environment in which there is both financial and emotional stability. Theoretically then, the foster home will almost always be better than the child's own home, particularly when a neglect finding has been made in the past. Thus, appellant concludes termination will often be based, as she alleges it was in this case, on economic and cultural factors that were found objectionable by the Supreme Court in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

■ Although we are sensitive to appellant's argument, it is clear from the record that the trial court carefully applied the "best interests of the child" test, thus avoiding possible constitutional infirmities that might arise if it appeared that all the court had done was to make a direct comparison of the natural parent and the foster home. In this case, the trial judge first made specific findings that delineated the special need of this child for a secure and permanent home, particularly in relation to the sexual abuse at age 4½ and the passage from her natural mother through two foster homes.[4] Next the court examined the parent-child relationship, finding that despite the affection and contact between the two, the natural mother was unable, due to her own psychological and emotional limitations, to satisfactorily mother the child. The record further indicates that none of the experts, including appellant's, advocated immediate return of C.O.W. to her mother. These and other findings were sufficient to conclude it is currently in the best interest of C.O.W. to find her a permanent home that can meet her specific needs and that P.W. cannot now provide such a home. Only then did the trial court turn to C.O.W.'s current placement, to determine what C.O.W.'s future was likely to

---

3. We are not dealing here with a custodial parent or one similar thereto, under which circumstances we have recognized "a more prominent role for a concern for the natural parents' rights" may be appropriate. *Id.* at 998.

4. The record reflects expert testimony that the need for defined parent-child roles and a limit-setting parent will become even more crucial as C.O.W., a victim of sex abuse, rapidly approaches adolescence.

be if he terminated appellant's parental rights at this time. Finding the current pre-adoptive home to be a favorable environment and that continuation of parental rights would require yet another foster home, the trial court ordered appellant's parental rights terminated. Termination was not based upon a comparison of foster parent and the natural mother. Therefore we reject appellant's constitutional attack on the statute as applied as well.[5]

*Affirmed.*

5. Appellant also attempts to frame this substantive due process issue as involving procedural due process as well. Appellant does not show the procedures required by the statutory scheme, D.C.Code § 16–2351 (1981), *et seq.,* to be deficient. Appellant's argument that the procedure should first focus solely on the natural parent is simply a rewording of her substantive argument already discussed.