**In the Matter of S.T.B., Alleged Neglected or Dependent Child, and concerning E.B. and A.B.**

No. 17642.

Supreme Court of South Dakota.

Considered on Briefs March 19, 1992.

Reassigned Nov. 3, 1992.

Decided May 5, 1993.

---

Terry D. Wieczorek, Brookings, for appellant A.B.

M.E. McCann, Brookings, for appellant E.B.

LeAnn Larson LaFave, Brookings, for appellee S.T.B., child.

Mark W. Barnett, Atty. Gen., Joan P. Baker, Asst. Atty. Gen., Pierre, for appellee State.

PER CURIAM.

A.B. ("Mother") and E.B. ("Father") appeal an order terminating their parental rights in their child, S.T.B. We affirm.

### FACTS

Mother and Father met shortly after Father was released from the State Training School in Plankinton. Mother became pregnant and she and Father were married in June 1990. S.T.B. was born on Novem-

ber 2, 1990. He was a normal, healthy baby and was released from the hospital on November 5, 1990.

Mother and Father took S.T.B. to the hospital on the evening of November 12, 1990 and explained that Father had fallen on some stairs while carrying S.T.B. They were concerned that S.T.B. may have injured his head. Dr. Merritt Warren did a thorough examination of S.T.B. and did not discover any injuries. Dr. Warren gave them liquid Tylenol and sent them home and suggested they watch for bruising.

Mother had a regularly scheduled doctor's appointment for S.T.B. for the next day, November 13, 1990. Dr. Robert Shaskey gave S.T.B. a thorough examination but discovered no abnormal physical findings. Mother specifically told Dr. Shaskey about the stair incident, but Dr. Shaskey found no injuries to S.T.B.

Eight days later, on November 21, 1990, Mother and Father again took S.T.B. to the emergency room at the hospital and explained that S.T.B. had been acting strangely that evening and they thought he had stopped breathing a couple of times. Dr. Richard Heib examined S.T.B. and determined he was acutely ill and that a brain injury was involved. S.T.B. stopped breathing but Dr. Heib was able to resuscitate him. Dr. Heib concluded that S.T.B. needed intensive emergency neonatal care and arranged to transfer him to Sioux Valley Hospital by air ambulance.

When S.T.B. arrived at Sioux Valley he came under the care of Dr. Richard Hosen. Dr. Hosen examined S.T.B. and determined that he was suffering from the following injuries:

1. Seven (7) lesions as follows:

 (a) a blue bruise on the right parietal area of the head, a few hours to one week old;

 (b) A right temple lesion, no color noted, of older age than (a);

 (c) a deep brown bruise on the right mandible, of older origin than (a);

 (d) a deep blue bruise near the anus, of recent origin;

 (e) multiple small skin leverages in the area of the scrotum; probably caused by a pinch or slap;

 (f) a purple bruise on back of left thigh, older than other bruises; and

 (g) a deep red bruise on the head of the penis; most probably from a pinch.

2. The child's fontanel, or soft spot on the head, was bulging.

3. A crack in the right parietal region of the child's skull.

4. Retinal hemorrhaging in the left eye.

5. Massive intercavial injuries as follows:

 (a) right parietal hematoma;

 (b) left frontal hematoma;

 (c) left temporal bleeding;

 (d) left parietal bleeding;

 (e) left occipital bleeding;

 (f) intra-cerebral bleeding; and

 (g) inter-cerebral bleeding.

6. Two corner fractures in the left tibia exhibiting new bone formation.

7. A corner fracture in the left femur showing no new bone formation.

Dr. Hosen quickly opined that S.T.B. was the victim of "battered child syndrome."

S.T.B. was obviously seriously ill and was not expected to live through the ordeal. Fortunately, he made a remarkable recovery. S.T.B. stayed in the hospital until December 21, 1990. As of the briefing in this case, his recovery was not complete. He suffers certain developmental difficulties. The long-term effects which will result from his brain injury cannot be diagnosed to any degree of medical certainty at this time other than there will be such long-term effects.

Social Services took custody of S.T.B. and initiated a dependency and neglect proceeding. On February 12, 1991, the trial court entered an adjudicatory order declaring S.T.B. dependent and neglected. Social Services attempted to provide services, but Mother and Father were uncooperative because of advice of counsel and fear of prosecution for child abuse. Mother and Father did not undergo counseling or attend any parenting courses. This is in part due to the uncooperativeness exhibited by

Mother and Father. Notwithstanding this uncooperativeness, Social Services workers provided limited services (because they believed that their efforts with these uncooperative parents would be futile).

 Mother and Father contend no "reasonable efforts" were made to reunite them with S.T.B. The fundamental nature of parents' rights to their children mandates at least reasonable efforts to aid them in retaining their offspring. *People in Interest of T.H.*, 396 N.W.2d 145, 148 (S.D.1986). *See also* SDCL 26–8A–21. However, in compelling circumstances, parental rights may be terminated without delay where it is in the best interests of the child. *People In Interest of T.L.J.*, 303 N.W.2d 800, 806 (S.D.1981). *See also In Interest of A.D.*, 416 N.W.2d 264, 267–68 (S.D.1987) (citing *Matter of B.E.*, 287 N.W.2d 91 (S.D.1979)) (services are not mandated in every case). This case, if any, presents such a compelling situation.* These parents had control and supervision over sixteen-day-old S.T.B. During this period of time, the defenseless S.T.B. suffered a nearly fatal head injury while in their sole care. Mother and Father would not or could not provide an explanation for these appalling injuries. They would not explain how S.T.B. came to have bruises and abrasions on his chin, penis, and anus. Nor would they explain the two chips in the bones of his legs. The rights of a parent to a child do not encompass a fundamental liberty to abuse a child by omission or commission. *Matter of V.D.D.*, 278 N.W.2d 194 (S.D.1979).

S.T.B. came within a few breaths of dying. He was not expected to live, but made a miraculous recovery with the help of outstanding medical care. There is evidence that S.T.B. will suffer ongoing effects from his injuries. He will more than likely always be a special needs child.

Mother's and Father's main concern during this critical period in S.T.B.'s life was to protect themselves from criminal charges rather than work with Social Services in order to gain the return of S.T.B. Understandably, Social Services workers were frustrated with parents such as these. Mother and Father were unable or unwilling to face up to what had caused S.T.B.'s injuries. Because of Mother's and Father's lack of cooperation, Social Services was limited in what it could accomplish. *People in Interest of D.H.*, 408 N.W.2d 743, 748 (S.D.1987) (termination is appropriate where services are unaccepted or unsuccessful). Dr. Dorrance Larson, a psychologist who examined Mother and Father, opined that although Mother and Father might be subject to rehabilitation, the prognosis was not good. The likelihood that counseling would be successful was diminished because Mother and Father were unwilling to admit responsibility.

The trial court held a dispositional hearing and found that Mother and Father had failed to cooperate with Social Services. In its dispositional findings of fact and conclusions of law the trial court concluded that Social Services had made "reasonable efforts" under the facts of this case to reunite S.T.B. with Mother and Father.

 When reviewing the termination of parental rights the question before this Court is: Does the entire evidence leave a definite and firm conviction that a mistake has been made? *Interest of T.H.*, 396 N.W.2d at 148. In order to overturn a finding of fact, this Court must be convinced that the trial court's finding was "clearly erroneous." SDCL 15–6–52(a). We are not convinced that the trial court was "clearly erroneous" when it found that "reasonable efforts" had been made in this case.

We have considered each of the arguments raised by Mother and Father and find them to be lacking in merit. We af-

* The trial court specifically found:

That, based upon the severity of [S.T.B.'s] injuries, [S.T.B.'s] immediate need for a safe, suitable familial environment; the parents continued denial of knowledge of the cause of [S.T.B.'s] injuries and the long term nature of

and poor outlook for success of counseling for the parents, compelling circumstances warrant the immediate termination of the parental rights of [Father] and [Mother] to [S.T.B.].

firm the trial court's order terminating Mother's and Father's parental rights.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.

