The PEOPLE of the State of South Dakota in the Interest of S.A.H., a child, and concerning J.H. and A.B.

Nos. 18770, 18779 and 18822.

Supreme Court of South Dakota.

Argued March 21, 1995.

Decided Aug. 16, 1995.

Rehearings Denied Sept. 25, 1995.

Jane Wipf Pfeifle, Leah J. Fjerstad, of Lynn, Jackson, Shultz & Lebrun, Rapid City, for J.H., appellant mother.

Anthony E. Crawford, Rapid City, for A.B., appellant father.

Portia K. Brown, of Morrill, Brown, Thomas & Nooney, Rapid City, for S.A.H. appellant child.

Mark Barnett, Atty. Gen., Joan P. Baker, Asst. Atty. Gen., Pierre, for the State of South Dakota and appellee.

CALDWELL, Circuit Judge.

In this consolidated appeal, J.H. (Mother) and A.B. (Father) appeal an order finding their Child, S.A.H., abused and neglected and terminating their parental rights. Mother and Child appeal the trial court's denial of Mother's motion for a mandatory open adoption. Mother and Child contend that an open adoption is in the best interests of the Child. We affirm.

## FACTS

Mother is twenty-nine years old, suffers from mental impairments and is deaf. Mother attended schools for the deaf in Minnesota and South Dakota but never graduated from high school. Mother is a client at Black Hills Workshop and lives in an apartment. Mother functions at a seven-year-old level.

Father also has a low IQ, is deaf and works at Black Hills Workshop. Father has a history of abusing alcohol and marijuana. Father suffered from depression and psychotic episodes in the past. Both parents suffer from immaturity, impatience, and lack of impulse and anger control. Both parents communicate through sign language. Mother and Father were never married.

Mother planned her pregnancy. During the pregnancy a social worker tried to help Mother develop parenting skills but to no avail. Child was born on May 22, 1993 and the Department of Social Services (DSS) removed Child from parents upon discharge from the hospital and placed him in foster care.

Parents were granted visitation for several hours every week. These visitations were supervised by DSS for the purpose of teaching Mother and Father parenting skills.

The supervising social workers observed open hostility between Mother and Father on many of the visitations. On some occasions the parents argued so intently they ignored Child. One social worker observed Mother drop Child during one of these arguments. Parents threw items against the wall while fighting.

Mother exhibited a lack of skill which endangered Child. Along with the fighting, Mother smoked while holding child and did not understand that a lit cigarette could be harmful to Child. Mother once left Child alone in the bath. Mother fell asleep during visitations and the social worker had to intervene to care for Child. Mother hit Child when he pulled her hair and yelled at Child for age appropriate behavior such as spitting up. When Child began to cry, Mother became agitated and started crying.

The state then filed an abuse and neglect petition on October 23, 1993. A hearing was held on said petition on January 21, 1994.

Testimony at the hearing indicated that Child had bonded with Mother but also revealed that Child bonded with Mother as with all frequent visitors.

Father was portrayed as indifferent to Child. He once remarked that Child would bring in a lot of government money. Social

workers observed that he became apathetic during visits and left Child unattended.

Mother's sister agreed to supervise a two-week Christmas visitation. Mother needed constant supervision during this two-week period. Mother was angry and resentful when sister made suggestions. Mother could not adapt her schedule to Child's.

DSS workers tried to teach parenting skills through demonstrations. The worker demonstrated a particular skill, such as diapering, and used a sign language interpreter to make sure the parents understood. DSS used many resources and techniques to aid Mother and Father. DSS consulted experts and the South Dakota School for the Deaf for assistance.

Despite these efforts, the parents were unable to master parenting skills. DSS workers testified that Mother and Father would learn a skill but lose that skill before the next visit. Parents had no understanding of the different stages of child development and age appropriate behavior.

Dr. Val Farmer evaluated Father on October 14, 1993. Dr. Farmer concluded that placing Child with Father could be emotionally damaging. Father exhibited no signs of interest in parenting. Dr. Farmer did not see any sign of bonding between Father and Child. Dr. Farmer did not meet or evaluate Mother.

Kay Lindgren, a licensed counselor, worked with Mother while she was pregnant. She testified that Mother is incapable of caring for Child. Mother failed to appear for scheduled appointments and ended the sessions in August 1993. Ms. Lindgren testified that Child would be emotionally neglected and in danger of physical harm in Mother's care. Ms. Lindgren was not aware of any services which would enable Mother to develop parenting skills. Ms. Lindgren testified that Mother is unable to control her impulses and allows Father to control the relationship.

Dr. Dawn Kugler, a clinical psychologist, also evaluated Mother. According to Dr. Kugler, no program or person can teach Mother sufficient parenting skills to care for Child.

Dr. Howard Dickman, a licensed psychologist who works with deaf people with mental impairments, evaluated Mother and Father and testified Child would be at risk of physical and emotional harm if placed with either parent. However, Dr. Dickman concluded that it would be positive for both parents, especially Mother, to play a role in Child's life.

The trial court concluded that Child was abused and neglected as defined by SDCL 26–8A–2.* Specifically, the trial court found that Child was abused or neglected as defined by subsections (2)–(6). The trial court found by clear and convincing evidence that it was in the best interests of Child to terminate the parents' rights and place Child for adoption. The trial court also found by clear and convincing evidence that termination was the least restrictive alternative. The trial court denied Mother, Father and Child's motion for an open adoption.

### STANDARD OF REVIEW

The question of whether a child is abused or neglected is a question of fact for

---

* SDCL 26–8A–2 reads:

In this chapter and chapter 26–7A, the term "abused or neglected child" means a child:
  (1) Whose parent, guardian, or custodian has abandoned the child or has subjected the child to mistreatment or abuse;
  (2) Who lacks proper parental care through the actions or omissions of the child's parent, guardian or custodian;
  (3) Whose environment is injurious to the child's welfare;
  (4) Whose parent, guardian or custodian fails or refuses to provide proper or necessary subsistence, supervision, education, medical care or any other care necessary for the child's health, guidance or well-being;
  (5) Who is homeless, without proper care or not domiciled with the child's parent guardian or custodian through no fault of the child's parent, guardian or custodian;
  (6) Who is threatened with substantial harm;
  (7) Who has sustained emotional harm or mental injury as indicated by an injury to the child's intellectual or psychological capacity evidenced by an observable and substantial impairment in the child's ability to function within the child's normal range of performance and behavior, with due regard to the child's culture; or
  (8) Who is subject to sexual abuse, sexual molestation or sexual exploitation by the child's parent, guardian, custodian or any other person responsible for the child's care.

the trial court to decide. *Matter of S.L.*, 419 N.W.2d 689, 692 (S.D.1988); *Matter of S.M.*, 384 N.W.2d 670, 673 (S.D.1986); *Matter of S.S.*, 334 N.W.2d 59, 61 (S.D.1983). This Court reviews questions fact by the clearly erroneous standard. *People in Interest of A.R.P.*, 519 N.W.2d 56, 61 (S.D.1994); *Matter of J.A.H.*, 502 N.W.2d 120, 123 (S.D.1993). The correct standard is not whether we would make a similar ruling but whether we are firmly convinced that a mistake was made. *A.R.P.*, 519 N.W.2d at 61; *Matter of D.H.*, 354 N.W.2d 185, 188 (S.D.1984); *S.S.*, 334 N.W.2d at 60.

ISSUE I: WHETHER THE TRIAL COURT ERRED IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT S.A.H. WAS ABUSED AND NEGLECTED

■ The trial court must find abuse and neglect by clear and convincing evidence. *J.A.H.*, 502 N.W.2d at 123; *S.L.*, 419 N.W.2d at 692. The finding of abuse and neglect must correspond to one of the subsections defining "abused and neglected child" found in SDCL 26–8A–2.

■ Mother and Father contend there was no basis to find by clear and convincing evidence that Child was abused or neglected. This Court is not convinced that a mistake was made in finding Child abused and neglected. Testimony established that Mother and Father are not intellectually capable of caring for Child. Child is in danger of being physically and emotionally harmed if left in the care of either parent.

■ Mother argues that the trial court's finding of an injurious environment was error because the Mother never had custody since Child was taken away from parents at the hospital. This Court recognizes that evidence of probable inadequate care in the future may serve as a basis for termination of parental rights. *A.R.P.*, 519 N.W.2d at 60; *J.A.H.*, 502 N.W.2d at 126. Termination proceedings are preventative as well as remedial. *A.R.P.*, 519 N.W.2d at 61; *Matter of B.E.*, 287 N.W.2d 91, 95 (S.D.1979). This Court also notes that those times Mother did have Child in her care for visitation, Child

was endangered. Child was dropped, hit, yelled at, left alone in a bath and ignored when Mother and Father fought.

II. WHETHER THE TRIAL COURT ERRED IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT TERMINATION OF PARENTAL RIGHTS WAS THE LEAST RESTRICTIVE ALTERNATIVE AND IN THE BEST INTERESTS OF CHILD

■ A trial court must be persuaded by clear and convincing evidence that termination of parental rights is in the child's best interest and that it is the least restrictive alternative. *J.A.H.*, 502 N.W.2d at 123; *Matter of A.S.*, 496 N.W.2d 589, 592 (S.D. 1993); *Matter of Z.Z.*, 494 N.W.2d 608, 609 (S.D.1993). The best interests of the child must always prevail. *A.R.P.*, 519 N.W.2d at 59; *S.M.*, 384 N.W.2d at 673–74. In the past this Court upheld the termination of parental rights of a retarded parent when efforts to help that parent failed. *Matter of S.W.*, 398 N.W.2d 136, 140 (S.D.1986); *Matter of S.A.H.*, 314 N.W.2d 316, 317 (S.D.1981).

Mother argues that DSS did not provide her with all possible services for a deaf, mentally impaired person. Mother contends that use of child care books specifically developed for the deaf and visual hands-on techniques were not used, and therefore, the department's efforts were not reasonable.

■ DSS must exercise reasonable efforts to return children to their parents. SDCL 26–8A–21; *Matter of S.T.B.*, 499 N.W.2d 903, 905 (S.D.1993). There is ample evidence to support the trial court's finding that the efforts by DSS were reasonable. DSS used sign language interpreters, hands on demonstrations, consulted with the School for the Deaf, and sought help from Black Hills Workshop. Unfortunately, the efforts by DSS were unsuccessful. Reasonable efforts do not include using every possible effort. *Matter of A.H.*, 421 N.W.2d 71, 75 (S.D.1988).

■ Parental rights can be terminated when the services to the parents are unsuc-

cessful. *A.R.P.*, 519 N.W.2d at 62. When repetitive efforts of the DSS fail to improve parenting skills, termination of parental rights is the least restrictive alternative and in the best interests of the child. *S.W.*, 398 N.W.2d at 140.

Father suggests long-term foster care as a less restrictive alternative to termination. The least restrictive alternative is viewed from the child's point of view. *Id.* at 139. When taking into account Child's best interest, this Court finds ample evidence to support the trial court's decision to terminate parental rights. Children have a right to be a part of a family and "should not be required to wait for parents to acquire parenting skills that may never develop." *A.R.P.*, 519 N.W.2d at 62 (quoting *In re J.Y.*, 502 N.W.2d 860, 862 (S.D.1993)). The testimony at trial established that the parents made little, if any, progress in improving their parenting skills. Long term foster care is generally not in a child's best interests. *Matter of S.W.*, 428 N.W.2d 521, 527 (S.D. 1988). Child has a right to have a stable family environment. Termination of parental rights was the least restrictive alternative when considering the best interests of Child.

### III. WHETHER THE TRIAL COURT ERRED IN NOT MANDATING AN OPEN ADOPTION

After the trial court terminated the parental rights, DSS was ordered to take custody of Child for the purpose of adoption in accordance with SDCL 26–8A–7. Mother and Father made a motion for the trial court to mandate an open adoption. "Open adoption" was defined by parents as "a right to continued contact with Child after he is adopted" or in other words, post-adoption visitation. The trial court denied the motion.

This is a matter of first impression in South Dakota. Nationwide, there is a split of authority on this issue. One approach considers post-adoption visitation on a case by case basis guided by what is in the best interests of the child. *Spencer v. Franks*, 173 Md. 73, 195 A. 306 (1937); *Petition of Dept of Social Services*, 392 Mass. 696, 467 N.E.2d 861 (1984); *Kambitch v. Ederle*, 642 S.W.2d 690 (Mo.1982); *Morse v. Daly*, 101 Nev. 320, 704 P.2d 1087 (1985); *Matter of Adoption of Children by F.*, 170 N.J.Super. 419, 406 A.2d 986 (N.J.Super.1979); *Kattermann v. DiPiazza*, 151 N.J.Super. 209, 376 A.2d 955 (App.Div.1977); *In re Adoption of Halloway*, 732 P.2d 962 (Utah 1986).

Another approach believes that adoption terminates all rights of the natural parents and therefore, post-adoption visitation is not an enforceable right. *Matter of W.E.G.*, 710 P.2d 410 (Alaska 1985); *Marckwardt v. Superior Ct. for the County of L.A.*, 150 Cal. App.3d 471, 198 Cal.Rptr. 41 (1984); *People in Interest of M.M.*, 726 P.2d 1108 (Colo. 1986); *Matter of C.O.W.*, 519 A.2d 711 (D.C.App.1987); *Calderon v. Torres*, 445 So.2d 1040 (Fla.App.1984); *Sanders v. Sanders*, 498 So.2d 1063 (Fla.App.1986); *In re M.M.*, 156 Ill.2d 53, 189 Ill.Dec. 1, 619 N.E.2d 702 (1993); *In re Adoption of Herbst*, 217 Kan. 164, 535 P.2d 437 (1975); *Jouett v. Rhorer*, 339 S.W.2d 865 (Ky.1960); *Matter of C.P.* 221 Mont. 180, 717 P.2d 1093 (1986); *Lisa W. v. Thomas M.*, 159 Misc.2d 359, 604 N.Y.S.2d 474 (Fam.Ct.1993); *Matter of Fox*, 567 P.2d 985 (Okla.1977); *In re Adoption of Dearing*, 572 S.W.2d 929 (Tenn.App.1978); *In re A.V.D.*, 62 Wash.App. 562, 815 P.2d 277 (1991); *Matter of Adoption of R.D.S.*, 787 P.2d 968 (Wyo.1990).

After a review of South Dakota law regarding adoption, this Court finds no prohibition against open adoption. The trial court has the discretion to order an open adoption. The term "[a]n abuse of discretion 'refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *State v. Flying Horse*, 455 N.W.2d 605, 607–08 (S.D.1990). The trial court did not abuse its discretion in refusing to mandate open adoption in this case.

The best interests of the child is the guiding force behind our adoption and dependency and neglect statutes. SDCL 25–6–2 (1992 & Supp.1994). Although the interests of adoptive parents should be considered, parental rights are secondary to the interests of the child. *Matter of Adoption of Francisco A.*, 116 N.M. 708, 714, 866 P.2d 1175, 1181 (App.1993). If affection exists

between the biological parent and the child, the court should not thwart that affection unless the best interests of the child are served. *Roquemore v. Roquemore*, 275 Cal. App.2d 912, 80 Cal.Rptr. 432, 434 (1969). The trial court must determine whether open adoption serves the best interests of the child on a case by case basis.

The most compelling argument for open adoption is founded on the psychological needs of the child. A child has an important need to know his ancestral, religious, ethnic and cultural background. *Morse*, 704 P.2d at 1090. Shrouding a child's past in secrecy may retard emotional development and self-identity. *Id.* The adopted child may have a strong need or desire to know his natural parents. The natural parents may be unable to raise or care for the child but the best interests of the child may dictate that those parents have a role in the child's life. *Petition of Dep't of Social Servs.*, 467 N.E.2d at 864. As one court noted, visitation should be used "as a flexible device to promote the child's welfare, rather than a natural right derived from parenthood." *Reeves v. Bailey*, 53 Cal.App.3d 1019, 126 Cal.Rptr. 51, 56 (1975).

One major disadvantage to open adoption is interference with the relationship between the adoptive parents and the child. *Matter of Adoption of Child by D.M.H.*, 135 N.J. 473, 641 A.2d 235 (1994). One jurisdiction noted that if visitation would subject the child to an on-going bitter dispute between biological and adoptive parents, then visitation should be denied. *People ex rel. Wilder v. Spence–Chapin Servs. to Families & Children*, 93 Misc.2d 617, 403 N.Y.S.2d 454, 455 (Sup.Ct.1978). As noted by the trial court, mandating open adoption may very well have a chilling effect on the potential pool of adoptive parents. Courts should consider how visitation will affect the adoption. *Matter of Adoption of Francisco A.*, 116 N.M. at 715, 866 P.2d at 1182.

When parental rights are terminated, the trial court should not mandate the parameters of the new family unit unless the court finds by clear and convincing evidence that the child's best interests are served thereby. The trial court should carefully weigh: 1) the psychological need of the child to know his ancestral, religious, ethnic and cultural background; 2) the effect open adoption will have on the child's integration with his adoptive family; and 3) the effect open adoption will have on the pool of prospective adoptive parents.

If a court mandates open adoption and thus grants post-adoption visitation, a guardian ad litem should be appointed to enforce the visitation order. *Matter of Adoption of Children by F*, 406 A.2d at 989. The court should grant post-adoption visitation only to people who acted in a custodial or parental role for the child. This prevents visitation rights being granted to any person who happens to feel affection for the child. *Adoption of Francisco A.*, 116 N.M. at 714, 866 P.2d at 1181. The trial court may reconsider open adoption at any time the child's best interests are jeopardized. *Id.*

It is clear from the record that the trial court carefully considered the arguments for and against open adoption in this matter and found by clear and convincing evidence that mandatory open adoption would not be in Child's best interests. The court found that Child's best interests required there be no impediments to his adoption.

The trial court is affirmed in all respects.

MILLER, C.J., and AMUNDSON, J., concur.

SABERS, J., dissents.

CALDWELL, Circuit Judge, for KONENKAMP, J., disqualified.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted did not participate.

SABERS, Justice (dissenting).

I agree with the majority's statement as follows:

The most compelling argument for open adoption is founded on the psychological needs of the child. A child has an important need to know his ancestral, religious, ethnic and cultural background. *Morse*, 704 P.2d at 1090. Shrouding a child's past in secrecy may retard emotional development and self-identity. *Id.* The adopted

child may have a strong need or desire to know his natural parents. The natural parents may be unable to raise or care for the child but the best interests of the child may dictate that those parents have a role in the child's life. *Petition of Dep't of Social Servs.*, 467 N.E.2d at 864. As one court noted, visitation should be used "as a flexible device to promote the child's welfare, rather than a natural right derived from parenthood." *Reeves v. Bailey*, 53 Cal.App.3d 1019, 126 Cal.Rptr. 51, 56 (Ct. App.1975).

Although interference with the relationship between the adoptive parents and the child is the major disadvantage to open adoption, *it need not be* because it can be controlled by the court. Obviously, as stated by the majority, the trial court "should consider [and control] how visitation will affect the adoption" and "reconsider open adoption at any time the child's best interests are jeopardized." In this case, more could be gained than lost by open adoption and if problems developed, visitation could be suspended indefinitely or otherwise controlled by the court.

In this case, the least restrictive alternative in the child's best interest would be a limited form of open adoption controlled by the court.