243 N.J. Super. 631 (1990)
581 A.2d 113
IN THE MATTER OF THE GUARDIANSHIP OF R.O.M.C. AND S.A.S.C.
Superior Court of New Jersey, Appellate Division.
Submitted September 10, 1990.
Decided October 10, 1990.
*632 Before Judges J.H. COLEMAN, DREIER and ASHBEY.
Robert J. Del Tufo, Attorney General, attorney for respondent New Jersey Division of Youth and Family Services (Michael R. Clancy, Assistant Attorney General, of counsel; Delores M. McNamee, Deputy Attorney General, on the brief).
Salvo & Salvo, attorneys for respondent Gloria Cullen (S. Kemble Salvo and Paul Van Embden, Guardian ad litem, on the letter brief).
The opinion of the court was delivered by DREIER, J.A.D.
The Division of Youth and Family Services (DYFS) has appealed from an order of the Family Part terminating the parental rights of G.C., the mother of R.O.M.C. and S.A.S.C. Mentally ill, G.C. was unable to care for her children. She opposed the order terminating her parental rights, but did not oppose the expected adoption of the children by their present foster parents. It is unclear, however, whether she understood *633 the full effect of the eventual order of adoption. She has had continued out-of-home visitation with the children under the supervision of DYFS and with the apparent cooperation of the foster parents. In recognition of this continued contact and the opinion of the psychologist retained by the guardian ad litem, the judge entered what might be called an "open adoption" order, permitting continued contact between the natural mother and the children, even after the termination of her parental rights.
DYFS's appeal is not based upon any disagreement that continued contact between the mother and children is desireable. It expects that the contact will continue, since the foster parents, natural mother and the experts have agreed that the contact is beneficial to the children. Nonetheless, the foster parents and DYFS have opposed a mandatory order which would mandate visitation even if the natural mother's mental illness worsened, and DYFS sees a chilling effect upon future adoption prospects generally, if orders terminating parental rights are known to be at all conditional. The trial judge and guardian ad litem concluded, however, that in this case there is no such chilling effect, and thus the judge determined that the special circumstances of this case warranted a deviation from the usual order.
This is a termination order by which DYFS enters into the exclusive guardianship of the child.[1]N.J.S.A. 30:4C-20, 21 and 22 speak in absolute terms of "terminating parental rights," *634 and that there should be no restriction on DYFS's authority following the termination. We cannot close our eyes to the facts of the case before us. But they do not call for a departure from the absolute order required by the statutes cited above. While we expect that the present foster parents will adopt R.O.M.C. and S.A.S.C., it is possible that intervening events could disturb their plans. Future foster parents may have difficulty coping with the natural mother's continued contact with the children, or the natural mother's condition could so change that visitation would be detrimental to the children's best interests. On the other hand, the adoption may be concluded as planned, and the expected voluntary contact accomplished without resort to a court order.
If there is a problem at some time in the future with the natural mother's effecting visitation on a consensual basis, then the natural mother could apply to DYFS for an investigation, and the court exercising its common-law powers, might direct that visitation be permitted, but only if the circumstances as they then exist show that such contact is in the best interest of the children. Cf. Mimkon v. Ford, 66 N.J. 426, 430-432, 332 A.2d 199 (1975) (grandparent visitation under N.J.S.A. 9:2-7.1, and discussing common-law rights dependent on the best interest of the child); Kattermann v. DiPiazza, 151 N.J. Super. 209, 214, 376 A.2d 955 (App.Div. 1977) (natural mother's right of visitation, dependent on best interests of the child); In re Adoption of Children by F., 170 N.J. Super. 419, 425-426, 406 A.2d 986 (Ch.Div. 1979) (natural father's right of visitation, also dependent on the children's best interests); and see cases compiled in Pressler, Current N.J. Court Rules, Comment R. 5:8-6 (1990).
The cases cited all interpret the adoption acts then in effect. Particularly, the cases (or in the case of grandparents, the statute) modify the absolute language of N.J.S.A. 9:3-50a, specifying the termination of rights of the natural parents, and establishing rights in the adoptive parents. The adoption statute establishes "the same relationships ... as if the child were *635 born to such adopting parent in lawful wedlock." N.J.S.A. 9:3-50b. Both adoptive and natural parents, however, are subject to some judicial oversight if the best interests of the child so require. As noted in Mimkon v. Ford, only a grand-parent possesses a statutory right to visitation (siblings as of January 6, 1988 have a similar right, N.J.S.A. 9:2-7.1), to be balanced with the needs of the child. The other cases cited earlier all focus solely upon the best interest of the child and all modify the absolute parental right of the adoptive or natural parent to control the child's contacts.
In the case before us, the order in favor of DYFS would cut off the mother's rights insofar as she could claim an independent entitlement to see the child against DYFS's wishes (or those of the adopting parents, after the expected adoption). After the order, the focus perforce must shift to the best interests of the child, rather than the natural mother.[2]
We could at this juncture merely delete the visitation portion of the order. But we cannot know whether, if the trial judge knew that the natural mother's mandatory visitation protection was being deleted, he would have entered the order at all. This was not the usual parental abandonment case. The natural mother had continued contact with the children, but was incapable of caring for them, and thus the case fell under the "neglect" provision of N.J.S.A. 9:6-8.21 et seq. The trial judge struck an equitable balance, and may well still be satisfied *636 with the termination order, relying on the good faith of the parties and any common-law protection that can be afforded the natural mother, if the best interests of the children so warrant in the future. On the other hand he may have been misled concerning the amenability of the foster parents to continued contact, and the natural mother's apparent agreement to a permanent loss of custody. The natural mother may also have been misled. The trial judge, however, was intimately connected with the case, seeing and hearing the witnesses. We do not want to act precipitously, and will thus remand the matter for his final decision whether to enter the termination order at all, in the light of any further argument of the parties.
The order appealed from is modified and remanded. We do not retain jurisdiction.
NOTES
[1] Since the natural mother did not concur that the termination order and future adoption were in the best interests of her children, this is not a consensual proceeding. In some consensual spousal adoptions, however, the other natural parent may voluntarily relinquish parental rights, but with the agreement of all that the relinquishing parent may retain some limited, but non-parental, role in the child's future. But, in those cases, DYFS does not obtain an order in its favor terminating parental rights. Even in a DYFS case, we can envision circumstances where some limitation on the absolute order may be necessary. Such a case is not before us. We need not here define the parameters for such a finding.
[2] Respecting the potential limits on DYFS authority in termination and the court authority respecting custody and visitation, see New Jersey Youth & Family Services Div. v. Torres, 185 N.J. Super. 182, 447 A.2d 1343 (App.Div. 1980), aff'd o.b. New Jersey Youth & Family Services Div. v. Torres, 185 N.J. Super. 234, 447 A.2d 1372 (Juv. & Dom.Rel. 1980), aff'd 185 N.J. Super. 182, 447 A.2d 1343 (App.Div. 1982). In Torres, foster parents successfully sought to consolidate their action for custody with the DYFS action to terminate parental rights. We there affirmed an order terminating parental rights and awarding custody to the foster parents (grandparents). In the case before us there was no consolidation of the termination and custody issues; the foster mother was not a party; and the natural mother's visitation rights were not encompassed in the issues presented to the court by the DYFS complaint.