**In the Matter of M. B., an Alleged neglected and dependent child.**

**No. 12736.**

Supreme Court of South Dakota.

Submitted on Briefs Jan. 21, 1980.
Decided Feb. 27, 1980.

Michael V. Black, Asst. Atty. Gen., Pierre, for respondent State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Wayne D. Groe, Stickney & Groe, Elk Point, for appellant mother.

Phillip O. Peterson, Frieberg, Frieberg & Peterson, Beresford, for child.

FOSHEIM, Justice.

This is an appeal from an adjudication of dependency and neglect and a disposition terminating appellant mother's parental rights. We affirm.

On November 15, 1976, a social worker from the South Dakota Department of Social Services visited the home of appellant in response to a report that appellant's child, M. B., was the victim of abusive physical treatment. Appellant's dwelling was unsanitary and unkempt. Numerous windows throughout the house were broken and had been replaced with cardboard to inhibit the influx of cold during periods of subzero weather. M. B.'s room contained one yellowed mattress and one torn, yellowed sheet. There was no bed or blanket in the room, or glass in the window. On this visit, the social worker found M. B., a five-year-old boy, dressed in yellow-stained, oversized clothing. The child's feet were totally black from dirt accumulation; he neither wore nor apparently possessed any shoes except for a pair of boots packed with feces. The child also exhibited signs of hyperactivity, speech impediment, and need for medical attention. Further investigation revealed that M. B. had not been toilet trained or immunized against certain diseases. It was later discovered that M. B. was routinely left in the care of an uncle who beat the child and forced him to ingest the products of his incontinence as a means of toilet training.

Several days later, the social worker was contacted by the parents concerning volun-

tary relinquishment of the child for adoption. Appellant and M. B.'s putative father admitted that they "just did not feel they were good parents." The parents, who were not married, left for California to establish a new life and the child was placed in a foster home. At the inception of foster care, M. B., possessed the vocabulary of a two to three year-old child and constantly used profane language. He had no concept of how to ingest certain basic foods and had difficulty interacting with other children. Once in foster care, however, the child exhibited rapid improvement in all of these areas and demonstrated a significant increase in IQ.

In early 1977, appellant returned from California and attempted to regain custody of the child. Shortly thereafter, the State sought the termination of appellant's parental rights. Following a hearing in August of 1978, the petition was granted.

Appellant first contends that there was insufficient evidence to support the trial court's finding of dependency and neglect. SDCL 26–8–22.5 requires that the State prove the allegations set forth in its petition by a preponderance of the evidence. The record in this case is replete with evidence of parental misconduct and conditions which establish that M. B.'s environment was injurious to his well-being and that proper parental care was not provided. Accordingly, we cannot conclude that the trial court's findings were clearly erroneous. SDCL 15–6–52(a); *Matter of R. Z. F.*, 284 N.W.2d 879 (S.D.1979); *In the Interest of D. K.*, 245 N.W.2d 644 (S.D.1976).

Appellant also claims that the trial court's disposition was based primarily upon a finding of poverty unsupported by the evidence and that termination of parental rights was not the least restrictive alternative available. At the time of disposition, appellant lived in a sparsely furnished, ramshackle apartment. According to one social worker, the dwelling was untidy and dilapidated; dried paint, which was peeling off the walls in sheets, was scattered about the apartment. M. B. told another social worker that during a two-day visit with appel-lant, there was no food in the apartment. Appellant could not cook meals due to the fact that (for reasons that are undisclosed) the gas had been shut off. The existence of these conditions, despite state-provided financial aid, clearly supports the trial court's conclusion with regard to appellant's resources.

Considerable evidence was introduced to support the termination of appellant's parental rights. It was established that appellant, over a period of at least one year, failed to meet minimum recommendations outlined by the Department of Social Services for the return of her child. A social worker testified that all of the suggested conditions could be met if attempted by the parent, but expressed serious doubt that appellant would effectively utilize assistance designed to help her meet these requirements. Evidence as to the probability of future adequate care is competent and may serve as a basis for the termination of parental rights. *In re K. D. E.*, 87 S.D. 501, 210 N.W.2d 907 (1973). This is especially true where appellant, while previously steadily employed, nonetheless failed to provide adequate care for M. B. and rejected assistance to obtain proper clothing for the child as "not worth the effort." We find no error in the termination of appellant's parental rights.

Appellant finally urges that the trial court erred in considering her occupation as a prostitute. Where the welfare of a child is the paramount consideration, it is the court's duty "at every turn to see the child is protected." *In the Interest of D. T.*, 89 S.D. 590, 237 N.W.2d 166 (1975). Thus, a parent's moral conduct is a valid consideration in a determination of parental fitness. *Blow v. Lottman*, 75 S.D. 127, 59 N.W.2d 825 (1953). We have recognized that a mother's immoral conduct does not necessarily establish that she is unfit in the absence of evidence of demonstrable effect of such conduct upon the child. *Kester v. Kester*, 257 N.W.2d 731 (S.D.1977); *Hershey v. Hershey*, 85 S.D. 85, 177 N.W.2d 267 (1970). While these cases involved marital

custody disputes, the principle applies equally for present purposes because in both custody and dependency cases, the best interests of the child are the primary consideration. SDCL 30–27–19.* There is no evidence that appellant pursued her profession in M. B.'s presence or that such conduct had any demonstrable effect on the child. The court, however, apparently based its findings and conclusions primarily on ample evidence of other conduct and conditions. Since the mother's immorality was not the controlling consideration in the court's decision, we find no prejudicial error. *Larson v. Locken*, 262 N.W.2d 752 (S.D.1978); *State Highway Commission v. Beets*, 88 S.D. 536, 224 N.W.2d 567 (1974); *State v. Pirkey*, 24 S.D. 533, 124 N.W. 713 (1910).

The order of adjudication and the decree of disposition are affirmed.

All the Justices concur.

---

\* SDCL 30–27–19 states in part:

    In awarding the custody of a minor or in appointing a general guardian, the court or judge is to be guided by the following considerations:

    (1) By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of a sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question;