368 N.W.2d 617 (1985)
In the Matter of the Dependency and Neglect of A.L.P., and Concerning Her Parents, D.L. and C.P.
Nos. 14584, 14594.
Supreme Court of South Dakota.
Considered on Briefs April 12, 1985.
Decided May 22, 1985.
Michael Williams, Asst. Atty. Gen., Pierre, for appellee State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.
Jeffrey T. Sveen of Siegel, Barnett & Schultz, Aberdeen, for appellee child A.L.P.
Daniel R. Moen of McNeary & Moen, Aberdeen, for appellant mother D.L.
Curt R. Ewinger of Rice & Bowen, Aberdeen, for appellant father C.P.
WUEST, Acting Justice.
This is an appeal from a dispositional order terminating the parental rights of D.L. and C.P. (parents) of A.L.P. (child). Parents appeal and we affirm.
Child was born July 16, 1983. Parents were never married. When child was three weeks old, the mother threw her about ten feet onto a gravel driveway during an argument between parents at 2:00 a.m., after they had been drinking alcoholic beverages at a local bar accompanied by the child. The Aberdeen, South Dakota, Police were called and found parents' apartment filthy, cluttered, odorous, and moldy, with cigarette butts and stale food scattered throughout the kitchen. Child was promptly *618 removed from the home by the Department of Social Services (Department), pending further investigation.
An adjudicatory hearing was held August 3, 1983, and child was determined to be neglected and dependent, having been subjected to mistreatment by parents. Child's environment was injurious to her welfare and she lacked proper parental care through the actions or omissions of her parents. Pursuant to a dispositional hearing, it was determined that both legal and physical custody of child was to be with Department for the purpose of placing child in foster care for a period of six months. Department was to work with parents toward the goal of returning child to parental custody once Department had determined it would be in the child's best interests. Parents were ordered to cooperate with the Intensive Prevention Placement Program (IPPP) offered by Department; attend mental health counseling appointments with a therapist at Northeastern Mental Health Center (Health Center); receive alcohol treatment through the Health Center and Alcoholics Anonymous (AA); consume no alcohol for the six-month period; allow announced and unannounced visits by Department in the home; participate in no further acts of violence; and, participate in a program of visitation with child as arranged by Department.
Department began working with parents within a few days after removal of child from the home. Department's IPPP was instituted with regular visits by Kevin Cantwell, Protective Service Worker, and Becky Grandpre, Intensive Placement Worker. Child was brought for home visits under the supervision of a social worker. The IPPP involves visits by the IPPP worker to the home to work with parents in proper parenting skills, abuse problems, personal hygiene, and cleanliness of the home. The program was also involved with alcohol problems of parents and the father's unemployment. The basic objective of the program was to reintegrate child into the family.
On October 27, 1983, parents were told child could be placed in the home on October 31, if the home was completely cleaned. Child was returned to parents on that date. On November 7, 1983, father got drunk. When the protective service worker visited the home during the afternoon of November 15, the apartment was filthy and child had not been bathed. In the afternoon of November 17, the police were again called to the home on a report of child abuse. Parents had a fight, in which father threw kool-aid on mother and she pulled his hair and threw chairs. Father locked himself in the bathroom. The mother pushed her five-year-old son by an earlier boyfriend causing him to fall and hit his head. Child started crying and mother went to the bassinet and struck child in the face. Father tried to call the police but mother ripped the telephone off the wall. When child was removed from the home, there was a red mark on the bridge of her nose, several bruises including one on her left eye and forehead, and a red mark around her neck, which was foul smelling from not being kept clean. Child was taken to the hospital emergency room and examined. Child was again placed in foster care. The police told father to leave mother's apartment for that night but he returned at approximately 8:00 a.m. the next day. Parents went to a grocery store and got into another argument. Mother hit her head against a pop machine until she broke the glass. After this occurrence, child was again removed from the home and a new petition filed alleging child to be dependent and neglected.
Department continued to work with parents in the counseling programs previously offered, and the protective service worker advised that parents needed to focus more attention on the mental health therapy and alcohol counseling. Department continued regular scheduled visits and arranged further supervised home visits for child, but on at least two occasions parents were not home at the time of the scheduled appointments. When child visited the home, she screamed most of the time and did not want to be held by her parents. The parents *619 got into another argument on December 23, 1983, and mother became angry and punched a hole in the wall with her fist, tore a door off the hinges by kicking, hitting and pulling it, and banged her head against a concrete wall, which caused her face to be sore for several days.
A hearing was scheduled on the second petition for December 20, 1983. On that date, the petition was amended and served upon parents and the hearing re-set for February 21, 1984. At the time of hearing, the petition was again amended for clarification. Parents were present and represented by counsel. At the hearing, both counsel for parents moved the court to consider the second amended petition, pursuant to SDCL 26-8-35.1,[*] which provides for a dispositional hearing. This motion was granted and the following occurred:
THE COURT: Mr. Moen and Mr. Ewinger, what is your position regarding the notification of the parents that this is a matter to determine termination of parental rights?
MR. MOEN: Your Honor, I believe that from the very beginning the State has indicated to us that that would be their position. I have no objection proceeding with the understanding that the State is going to recommend to the Court the proper disposition will be termination of parental rights of my client. I believe that our original Summons did indicate that and that's what we're prepared to defend against.
MR. EWINGER: That is also our understanding, Your Honor.
The petition was read and explained to parents by the court. The court advised them it might enter orders concerning the custody, care, and discipline of child, including permanent termination of parental rights. Parents indicated they understood. They acknowledged written notice of the hearing and sufficient time with their counsel to prepare for the hearing. The court explained the proceedings and the burden of proof. At no time during the three-day trial was there any objection to due process; nor was there any motion or request for a continuance. Neither the parents, the state, nor the court treated the February 1984 hearing as an adjudicatory hearing, because child had been adjudicated dependent and neglected without objection from her parents in September of 1983.
Parents now claim they were denied due process. A parental interest is guaranteed by the Fourteenth Amendment and protected by the Due Process Clause. Matter of F.J.F., 312 N.W.2d 718 (S.D. 1981). In Matter of N.J.W., 273 N.W.2d 134, 139 (S.D.1978), regarding dependency and neglect proceedings, we said: "Notice, to comply with due process requirements, must set forth the alleged misconduct with specificity and particularity. Application of Gault, 387 U.S. 1, 33-34, 87 S.Ct. 1428, 1446-47, 18 L.Ed.2d 527 (1967). See also SDCL 26-8-22.5 and 26-8-22.6."
The procedural due process requirements in parental rights termination hearings have been recognized by the Eighth Circuit Court of Appeals. Notice must include time and place, a clear statement of the purpose of the proceedings, and the possible consequences, factual basis, and statement of the legal standard authorizing termination. Syrovatka v. Erlich, 608 F.2d 307, 310 (8th Cir.1979), cert. denied, 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788, reh'g denied, 448 U.S. 910, 100 S.Ct. 3056, 65 L.Ed.2d 1140. See also Alsager v. District Court of Polk Cty., Iowa, 406 F.Supp. 10 (S.D.Ia.1975), aff'd, 545 F.2d 1137 (8th Cir.1976).
*620 The November 21, 1983, petition, later amended, was served upon parents together with a summons and notice of legal rights and privileges. The summons notified them, "that termination of parental rights is a possible remedy under these proceedings." The petition generally stated the facts regarding the acts of violence toward child and between parents, alcohol abuse of parents, and the progress of Department in its efforts to rehabilitate the family. The later amended petitions were more specific.
We do not believe the record in this case supports any denial of due process. After hearing three days of evidence on the termination issue, the trial court issued its memorandum opinion holding adversely to the parents. We believe the trial court carefully provided every legal right and consideration for these parents and child.
On appeal, mother argues that termination of her parental rights was not the least restrictive alternative available to the trial court to protect the minor child. The father does not urge this ground for reversal.
The mother was raised in an atmosphere of family violence. She was subjected to sexual abuse by her father and uncles when quite young. She was often severely beaten by her parents as a matter of course. When she told her mother about her father's sexual contacts with her, her mother accused her of lying and beat her. On occasions, her father had severely beaten and kicked her.
An outpatient therapist at the Health Center, LaVonne Appletoft, who spent many sessions with parents trying to teach them ways to communicate without becoming violent with each other, finally determined by the last session which took place on February 20, 1984, that no progress had been made. The therapist reported that when mother becomes angry the violence will continue and until the violence in the home completely stops it would end up being directed at child again if she was in the home.
The Chemical Dependency Counselor for Health Center, Helen Blackburn, worked with parents during this period. Mother has been able to abstain from alcohol during the period of therapy but she was described as having the "dry drunk syndrome." In other words, having the lifestyle of an alcoholic but not consuming alcohol. Mother has not really made the commitment to stay sober. As to father, Ms. Blackburn's experience was even less successful. At the counseling sessions, she felt he was telling her what she wanted to hear but not meaning it or admitting he had an alcohol problem. Several times during the counseling period, father had gotten drunk. He made it clear that he only went to counseling because Department required it. He consistently refused to attend AA meetings. Ms. Blackburn testified that the mother would need at least thirty days of inpatient treatment, followed by one to three years of chemical dependency counseling. According to Ms. Blackburn, father will not be able to maintain sobriety. Father is an alcoholic and will have to have professional help and a firm commitment to abstain from alcohol. He does not have that commitment. Ms. Blackburn further indicated it would not be a healthy situation for child to be in this home. The only motivation parents have exhibited is to get Department off their back and resume their regular lifestyle.
It clearly appears from the trial court's memorandum decision that it considered the question of the least restrictive alternatives in making its dispositional order. As the trial court stated, and as was incorporated in the findings of fact,
The parents were given all the advice, assistance and aid that society has available. This included counseling from different sources that were designed to reach each problem causing their difficulties. Not one of the professional counselors felt these parents had improved during the time they had worked with them or even showed slight improvement. The final recommendation in each case was for permanent termination of parent rights.

*621 Society provides many forms of assistance to families to keep them functioning and healthy. This includes financial aid, food stamps and many kind of free professional counseling and assistance. All of these have been made available to this family in a really concentrated form and still they continued to be the same violent abusive parents. There is nothing more society has to offer that has not been tried.
The trial court also explicitly set forth its balancing of the rights of the child, her parents, and society, as required by Matter of S.H., 337 N.W.2d 179 (S.D.1983). As this Court has recently held:
Termination of parental rights is not conditioned on exhaustion of every possible form of assistance.... In the event counseling and therapy fail to improve parenting skills, termination of parental rights is justified.... Social Services cannot implement its plans and programs without the client's participation and cooperation.... When all Social Services attempts and assistance fail for lack of cooperation, no narrower or less restrictive alternative remains.
Matter of D.H., 354 N.W.2d 185, 191 (S.D. 1984) (citations omitted).
The trial court specifically found that no less restrictive alternative existed on the facts and circumstances of this case, and we agree.
The order of the trial court is affirmed.
All the Justices concur.
NOTES
[*] SDCL 26-8-35.1 provides:

If the court places legal custody in the department of social services without an approved plan for long term foster care, the department shall conduct an administrative review every six months of the services provided to the child and the child's family and report its findings to the court. If the department at any time finds that further court action is necessary to terminate parental rights or to clarify the child's legal status, or is desired to implement a case service plan, the state's attorney, on request by the department, shall petition the court for a hearing as provided in § 26-8-62 or § 26-8-63.