In the Matter of S.W., V.W., and L.W., Alleged Dependent and Neglected Children and Concerning D.W., Mother.

No. 15190.

Supreme Court of South Dakota.

Considered on Briefs Sept. 18, 1986.

Decided Dec. 23, 1986.

Janice Godtland, Asst. Atty. Gen., Pierre, for appellee State of South Dakota; Mark V. Meierhenry, Atty. Gen., on the brief.

James D. Taylor of Tinan, Padrnos, Smith & Taylor, Mitchell, for S.B.W., V.L.W., and L.M.W., Alleged Dependent Children.

Tim D. Tucker of Morgan, Fuller, Theeler & Cogley, Mitchell, for appellant Mother.

TALBOTT, Circuit Judge.

D.W. (Mother), appeals from an order terminating her parental rights over S.W., V.W., and L.W. (children). We affirm. The natural father's parental rights were terminated by publication pursuant to SDCL 26–8–16. He is not a party in this appeal.

Mother is forty-six years old and has three children ranging from ages seven to fourteen. She has an I.Q. ranging between sixty-three and sixty-six. Different aspects of her development have been arrested around the five year age.

Mother has had a very extensive history of intervention by social service agencies.[1] In April 1984, the South Dakota Department of Social Services (Social Services) was again contacted because of the condition of Mother's home. Mother received help from Intensive Placement Prevention Program (IPPP), a home-based family service that works with the family. A protective payee was appointed to help Mother prepare budgets and handle money. The family received assistance in the form of parenting counseling, home management, transportation, and a parent aid. In spite of the various aids given to Mother, the children often had poor hygiene and were poorly clothed, and the house was often in an unacceptable or uninhabitable condition. There were also times when the social workers' scheduled visits to the home were hampered by Mother's absence or noncooperation.

On May 31, 1985, Social Services was given temporary custody due to the fact that two of the children had been with Mother and R.B.O.A. (Stepfather, Mother's live-in boyfriend at the time and present husband)[2] in a car during a robbery on May 29, 1985. A new petition[3] was filed

---

1. The Wisconsin Department of Social Services began providing services to Mother in 1968. The South Dakota Department of Social Services got involved in 1977. Since that time, there has been almost constant monitoring by the Wisconsin and the South Dakota social service agencies.

2. Stepfather and Mother were married on July 7, 1985, which was after the adjudication hearing but before the dispositional hearing.

3. An earlier petition alleging dependency and neglect was filed October 23, 1984. No action was taken on that petition. On April 25, 1985, the children were placed in the temporary cus-

on June 6, 1985, alleging that the children were dependent and neglected. The three children were adjudicated dependent and neglected on June 17, 1985. The dispositional hearing was held on September 26, 1985. On October 31, 1985, findings of fact and conclusions of law were filed. The trial court found that the reasonable efforts made by Social Services to prevent the need for removal of the children and to make it possible for their return had failed. Specifically, the trial court stated in its dispositional findings of fact that the Mother had failed to provide proper parental care to the children in the following ways:

Although the Department of Social Services has managed to find improved physical facilities for the home, as recent as one and a half (sic) weeks prior to this hearing, the house was in total disarray. When visited by social workers at that time, the home had piles of unwashed dishes, large amount of trash within the house, beer cans lying around, very few food staples, and a distinct odor noticeable even before entering the house.

There was additional evidence at the hearing that the children were poorly groomed when in their mother's custody. Baths were few and far between and the children were dressed in soiled and spotted clothing.

Testimony was also given that the youngest child has a speech problem which can most likely be attributed to a lack of stimulation in the home. She has no physical disability. Although this condition has improved through therapy, testimony indicated with home supplementation, accelerated improvement would have been likely. This was not possible, however, due to difficulty in working with the mother as well as difficulty in contacting her.

A counselor from the mental health center who had previously evaluated the children, testified that the environment with their mother had a negative impact on the children and a return to her would be detrimental.

Additionally, the mother has recently remarried. Her current husband has an extensive criminal background, *is currently awaiting sentencing on a felony and habitual criminal charges.* The influence of such a man on the children would likely be detrimental. (emphasis added by this court)

In light of these conditions, the trial court found that the least restrictive alternative was to terminate Mother's parental rights. A termination order was filed October 31, 1985. Mother filed an appeal from the order of adjudication and order of disposition on November 18, 1985. On December 19, 1985, a judgment of conviction was entered against Stepfather sentencing him to fourteen years in the South Dakota penitentiary for second-degree burglary.

■ On appeal Mother argues that the conviction and incarceration of Stepfather constitutes new evidence requiring reversal and remand for a new trial. Mother bases her request for a new trial on our language in *In re Matter of D.H.*, 354 N.W.2d 185, 192 (S.D.1984), stating, "The general rule is that appeal from a judgment or order strips the trial court's jurisdiction over the subject matter of the judgment or order, except as to certain trivial matters, and this court then has jurisdiction until determination of the appeal."

SDCL 26–8–63 provides that a parent or a child adjudicated under Chapter 26–8 may petition the court for a new hearing on the ground that new evidence has been discovered.[4] SDCL 15–6–59(a) provides that a

---

tody of Social Services. This order was vacated on May 6, 1985.

4. SDCL 26–8–63 reads:

A parent, guardian, custodian, or next friend of any child adjudicated under this chapter, may petition the court for a new hearing on the ground that new evidence has been dis-

covered which was not known and could not with due diligence have been made available at the original hearing and which might affect the decree.

If it appears to the court that there is such new evidence which might affect the original decree, it shall order a new hearing and shall make such disposition of the case as warrant-

new trial may be granted when there is newly discovered evidence.[5] This statute mandates that a motion for a new trial *must* be made upon affidavits attached to and made part of the motion. Before a new trial is granted upon the basis of newly discovered evidence, an appellant must show that this new evidence will change the outcome of the case. *Lee v. Braggman*, 39 S.D. 175, 162 N.W. 788 (1917); *Skinner v. Krotter Co.*, 72 S.D. 622, 38 N.W.2d 145 (1949); *Basin Electric Power Coop. v. Gosch*, 90 S.D. 222, 240 N.W.2d 96 (1976). SDCL 26–8–63.

We find no "petition" of the Mother and no supporting affidavits. Apparently, Mother merely relies on having addressed the request in her appellate brief. Notwithstanding this deficiency in this record, we will address the request.

It is obvious that the conviction and incarceration of Stepfather does not constitute "newly discovered evidence." The trial judge and Mother were aware that Stepfather was awaiting sentencing on a felony and habitual criminal charges and were further apprised of Stepfather's extensive criminal background. The trial judge most likely realized that Stepfather's upcoming sentencing would result in a substantial period of incarceration. Therefore, the sentence of Stepfather is not "newly discovered evidence."

■ Even if the sentence was found to constitute "newly discovered evidence," there was additional evidence presented to the trial court which indicates that Stepfather's presence in the home was merely one of many factors which led to the termination of the parental rights. First, Mother's problems were chronic and of a long duration. They included her low intelligence, her emotional disturbance, and her inability to meet her children's needs. Stepfather's presence or absence had little bearing, if any, on her problems. Second, various social agencies provided Mother with services for the last seventeen years, nine of which were by the South Dakota Department of Social Services. Conversely, Stepfather was involved with Mother for less than one year. We determine that there is no reasonable probability that this evidence would produce a different result upon a new trial. *Skinner, supra*, 38 N.W.2d at 146.

■ Mother also argues that the termination of her parental rights was not the least restrictive dispositional alternative available. Mother asserts that with concrete and repetitive instructions in parenting skills, she could provide the proper care for her children. Counsel for the children and the state argue that termination is the least restrictive alternative. We agree.

The least restrictive alternative is viewed from the child's point of view, not that of the parent, as the prime concern of the court is the child. The best interests of the child must prevail. *In re R.Z.F.*, 284 N.W.2d 879 (S.D.1979); *In re C.L. and B.R.*, 356 N.W.2d 476 (S.D.1984).

Certainly, when it comes to something as important as the welfare of young children, promises of the parents to conform to the standard of care for their children which is expected in our society do not carry as much weight as their past actions of not properly caring for their children.

---

ed by all the facts and circumstances and the best interest of the child.

5. SDCL 15–6–59(a) reads:

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes: ...

(4) Newly discovered evidence, material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial;

.    .    .    .    .

On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

When the motion be made for a cause mentioned in subparagraphs ... (4), it must be made upon affidavits attached to and made a part of the motion[.]

*In re J.M.V.D.*, 285 N.W.2d 853, 855 (S.D. 1979). As this court has stated many times over:

> Termination of parental rights is not conditioned on exhaustion of every possible form of assistance.... In the event counseling and therapy fail to improve parenting skills, termination of parental rights is justified.... Social Services cannot implement its plans and programs without the client's participation and co-operation.... When all Social Services attempts and assistance fail for lack of cooperation, no narrower or less restrictive alternative remains. *Matter of D.H.*, 354 N.W.2d 185, 191 (S.D.1984) (citations omitted).

*Matter of A.L.P.*, 368 N.W.2d 617, 621 (S.D.1985).

Mother's promises to do better in the future are of no avail to her now; her past actions speak louder than words. Mother has received concrete and repetitive help, but no change in the family condition has resulted. The South Dakota Department of Social Services alone provided extensive services to appellant for nine years. Some of the services included a protective payee, a homemaker, a nutrition aide, parenting counseling, transportation, the IPPP, and referrals to other counseling. These extensive efforts failed to resolve appellant's problems. Therefore, we agree that termination is the least restrictive alternative.

Furthermore, it is clear from the trial court's memorandum decision and subsequent findings of fact and conclusions of law that it considered the question of the least restrictive alternative in making its dispositional order. The trial court in its conclusions of law explicitly stated that it had balanced the fundamental rights of Mother to raise her children with the best interests of the children and the public, as required by *Matter of S.H.*, 337 N.W.2d 179 (S.D.1983).

Finally, the fact that Mother is mildly retarded does not place her in a special classification. In the past we have upheld the termination of parental rights of a retarded parent when efforts to help that parent failed. *In re S.A.H.*, 314 N.W.2d 316 (S.D.1982).

We are in agreement with the trial court's finding that no less restrictive alternative existed under the facts and circumstances of this case. That finding is not clearly erroneous.

The decree of disposition and termination of Mother's rights is affirmed.

WUEST, C.J., HENDERSON and SABERS, JJ., and FOSHEIM, Retired Justice, concur.

TALBOTT, Circuit Judge, for MORGAN, J., disqualified.

MILLER, J., not having been a member of the court at the time this action was submitted to the court, did not participate.