502 N.W.2d 120 (1993)
In the Matter of J.A.H., Alleged Dependent or Neglected Child.
Nos. 17901, 17915.
Supreme Court of South Dakota.
Argued February 9, 1993.
Decided June 23, 1993.
*122 Mark Barnett, Atty. Gen., Karen E. Cremer, Asst. Atty. Gen., Pierre, for appellant State of S.D.
James E. Carlon of Carlon Law Office, Pierre, for appellee parents.
MILLER, Chief Justice.
This appeal arises out of the adjudication of a child as dependent and neglected and the trial court's subsequent restoration of the child to his parents at the conclusion of the dispositional hearing. State appeals the disposition and Parents, by notice of review, contest the trial court's adjudication of dependency and neglect. We affirm.

FACTS
B.H. (Mother) became pregnant at age nineteen by one man, married another, and then gave birth to D.N., a boy, on September 17, 1982. While married, she began living with another man, D.H. (Father), who fathered S.L.N., a boy born December 15, 1983, and D.N.H. (Brother), born February 20, 1986. Mother then divorced her husband and shortly thereafter, married Father. Another child, C.M.H. (Sister) was then born to Father and Mother (Parents) on October 10, 1987. Parents were living in Arizona in 1986 when they came to the attention of Arizona's Child Protection Service. In 1987, Parents moved to Pierre, South Dakota, where they came to the attention of South Dakota's Department of Social Services (DSS). In 1988, Parents and their three children moved to Germany as Father was in the United States Army.[1] While in Germany, they enrolled in psychotherapy during which it became clear S.L.N. was being sexually abused and was physically and sexually abusing other children.
The family moved back to Pierre in January, 1989, when S.L.N. was six years old. He was removed from Parents' home the following month by DSS at Parents' request because he was sexually and physically abusing his younger brother. It was later determined S.L.N. was being sexually abused by Father. In March, Parents' rights to S.L.N. were voluntarily terminated. Brother and Sister were removed from Parents' home by DSS shortly thereafter following further investigation. Mother then left Pierre for six months with a male companion. Parents' rights to Brother and Sister were involuntarily terminated in April, 1990, because of neglect and sexual/physical abuse by Parents.[2]
That fall, a DSS worker happened to see Mother checking into a hospital maternity ward. The worker immediately began making inquiries to determine whether Parents had received any counseling as perpetrators of sexual child abuse since the April involuntary termination of their parental rights to Brother and Sister. It was soon determined that Parents had received no such counseling. Another boy, J.A.H. (Child), was born to Parents on November 9, 1990. DSS filed a petition to have Child declared dependent and neglected.[3] An emergency removal hearing was set for November 19, by which time Child was ten days old. Parents' retained an attorney for the purpose of noticing the trial court and State that they would not be appearing.[4] Child was removed from Parents' home and placed in the temporary custody of DSS, though Parents were to have supervised visitation with Child.
State then filed a motion requesting the trial court to take judicial notice of the court files which had led to Parents' termination of their parental rights to Brother *123 and Sister. The motion was granted over Parents' objections. State's motion requesting Child be declared dependent and neglected based on the proceedings involving Brother and Sister was denied.
An adjudicatory hearing was held in March, 1991, at which time Child was found to be dependent and neglected. The dependency and neglect findings of fact and conclusions of law from Brother and Sister's proceedings were considered and adopted in Child's proceeding. Custody was continued with DSS. In April, the parties stipulated to an interim dispositional order. In May, Parents filed a motion seeking the return of Child. The court ordered that attempts be made to unify Parents and Child. A dispositional hearing was held in January, 1992, after which the court ordered Child to "be placed with and returned to the physical and legal custody of his parents, D.H. and B.H., with protective supervision by the Department of Social Services, based on the court-approved plan which is attached hereto and incorporated by this reference."
State appeals the trial court's dispositional order and Parents, by notice of review, assert the trial court erred when it determined Child was dependent and neglected.

DISCUSSION

I. WHETHER THE TRIAL COURT WAS CLEARLY ERRONEOUS WHEN IT DETERMINED J.A.H. WAS A DEPENDENT AND NEGLECTED CHILD.
State must prove by clear and convincing evidence that a child is dependent and neglected. In re S.L., 419 N.W.2d 689, 692 (S.D.1988); Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599, 617 (1982). Our prior decisions have established that it is appropriate for the trial court to take judicial notice of earlier findings as to abuse and neglect. See In re L.B., 416 N.W.2d 598, 599 (S.D.1987); In re R.Z.F., 284 N.W.2d 879, 881 (S.D.1979); In re K.D.E., 87 S.D. 501, 506, 210 N.W.2d 907, 910 (1973). Prior findings are relevant to the determination of whether abuse of other children in this same family is likely and this determination is within the discretion of the trial court. L.B., 416 N.W.2d at 599; R.Z.F., 284 N.W.2d at 881; K.D.E., 87 S.D. at 506, 210 N.W.2d at 910. Although prior findings of abuse and neglect are not necessarily conclusive, it is error for a later trial court to take evidence of the time prior to that adjudication of dependency and neglect. R.Z.F., 284 N.W.2d at 881; In re N.J.W., 273 N.W.2d 134, 137 (S.D.1978).
"This court does not decide factual issues de novo[.]" In re D.H., 354 N.W.2d 185, 188 (S.D.1984). We will not disturb the court's findings of fact "unless they are clearly erroneous and we are, after a review of all the evidence, left with a definite and firm conviction that a mistake has been made." In re A.M., 292 N.W.2d 103, 105 (S.D.1980); In re V.D.D., 278 N.W.2d 194, 197 (S.D.1979). Clear and convincing evidence is evidence "so clear, direct, weighty, and convincing as to allow the trier of fact to reach a clear conviction of the precise facts at issue, without hesitancy as to their truth." In re S.W., 428 N.W.2d 521, 524 (S.D.1988) (citations omitted).
Parents observe that there has been no specific incident of any abuse or neglect of Child and assert the trial court erred when it relied on the findings from the proceedings which led to the termination of their parental rights to Brother and Sister.[5] A finding of specific instances of abuse or neglect is not a predicate to an adjudication of abuse and neglect. K.D.E., 87 S.D. at 505-06, 210 N.W.2d at 910; SDCL 26-8A-2.[6] Parents have never admitted they are perpetrators of sexual child *124 abuse and have never sought counseling for their aberrant behavior. The trial court heard testimony that before such counseling is effective, it is necessary for perpetrators to admit their acts. In view of additional testimony before the court that repeat incidents of sexual abuse by Parents is not only possible, but is likely, the trial court did not abuse its discretion by referring to the previous findings of abuse and neglect.
The record clearly supports the trial court's determination that Child is a member of a dysfunctional family which has, for several generations, been victims and perpetrators of sexual child abuse. Mother was herself the victim of continuing sexual child abuse by her adoptive father since 1969 when she was seven-years-old. In view of the entire evidence, we find the trial court was not clearly erroneous when it determined Child was abused or neglected.

II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO TERMINATE PARENTAL RIGHTS.
The trial court's judgment of disposition ordered that Child "be placed with and returned to the physical and legal custody of his parents, D.H. and B.H., with protective supervision by the Department of Social Services[.]" State asserts the trial court abused its discretion when it did not terminate parental rights following its determination that Child was abused and neglected. Termination of parental rights is not as mechanical as State suggests. The finding of dependency and neglect by clear and convincing evidence does not of itself warrant termination of parental rights.
Termination of parental rights must be supported by clear and convincing evidence that it is in the best interests of the child and is also the least restrictive alternative available commensurate with those interests. State ex rel. K.C., 414 N.W.2d 616, 620 (S.D.1987). "The least restrictive alternative is viewed from the child's point of view ... as the prime concern of the court is the child. The best interests of the child must prevail." In re S., V. & L.W., 398 N.W.2d 136, 139 (S.D.1986); K.C., 414 N.W.2d at 620.
State asserts that since the determination had been made that Parents were sexual abusers who have not received counseling, "the only matter which was relevant in J.A.H.'s case was whether or not the parents had sought treatment as sexual abuse offenders." State asserts too much. This was not the only relevant consideration and the record reflects the trial court's consideration of additional issues. The trial court did find though, that "[t]he sole issue in dispute is whether [Parents] should have to undergo sexual abuse therapy before [Child] can be returned." But this observation and finding does not support State's assertion that the trial court improperly placed the concerns of Parents ahead of Child's concerns.
There was testimony before the trial court that even though Parents were not receiving sexual abuse therapy, they were participating in programs and counseling sessions and their parenting skills were improving. The trial judge was fully aware of the previous sexual abuse Parents perpetrated upon their other children and that there was a potential for sexual abuse problems to recur. However, State has not shown Parents were sexually abusing Child.
State argues the trial court improperly allowed Parents to relitigate the issue of whether or not they sexually abused Brother and Sister. The trial court ordered the parties not to offer evidence to attack the previous findings of fact and conclusions of law. Though there may have been some testimony which can be characterized as inadmissible, State has not overcome the presumption that the trial court disregarded such testimony. In re R.S.S., 474 N.W.2d 743, 750 (S.D.1991); State ex rel. M.W., 374 N.W.2d 889, 892 (S.D.1985). A dispositional finding of fact wherein it is noted that testimony was given which included opinions that prior sexual abuse did not occur, is not here sufficient *125 to overcome the presumption the testimony was disregarded because the trial court found it was bound by the prior determination that sexual abuse did occur and that Parents were the perpetrators. "In a trial to the court in which admissible evidence supports the findings, additional evidence, though inadmissible, is nonprejudicial." R.S.S., 474 N.W.2d at 750 (citations omitted).
There was conflicting testimony before the trial court whether it was in the best interests of this child at this time to terminate parental rights. The court concluded it was not in Child's best interest at this time. Although the trial court's conclusion may be different from what this court would have concluded, the question is not "whether we would have made the same findings the trial court did; rather, the question is whether, after a review of all the evidence, we are convinced that a mistake has been made." S.W., 428 N.W.2d at 525 (citations omitted). We are not convinced the trial court made a mistake and thereby abused its discretion when it determined it was in Child's best interests to return him to the care and custody of Parents.

III. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED DSS TO PROVIDE LONG-TERM PROTECTIVE SUPERVISION TO CHILD.
The trial court found there was "no longer clear and convincing evidence that sexual abuse therapy must occur before [Child] can be returned, [although] for purposes of this disposition there remain sufficiently strong `concerns' which, when considered together with the lack of parenting skills, marital issues and other types of neglect, mandate long term supervision of this family." The trial court then concluded in part that physical custody should be returned to Parents with protective supervision by DSS subject to terms to include marriage, family and child therapy counseling sessions and parenting classes. State objects to the protective supervision order.
The trial court may, in its final decree of disposition, return Child to Parents with or without protective supervision or he may be placed with DSS for a length of time subject to conditions which the trial court determines to be necessary or appropriate. SDCL 26-8A-22(1). Here, Child was returned to Parents and DSS was ordered to continue supervision "until [Child] reaches the age of majority or until further order of this [trial] Court." State misstates this order when it asserts this is an order to DSS "to provide protective services to a child for 17 years." Further, this court is not persuaded by State's unsupported assertion that there "will be no further court order ending supervision."
State asserts supervision until Child's majority exceeds the definition of an appropriate length of time envisioned by the legislature. This assertion is not supported by insights into what the legislature may have envisioned when it enacted SDCL 26-8A-22(1). Nor is it certain that supervision must be provided until Child's majority in view of the trial court's provision of the alternate duration of supervision: "until further order of this Court."
State also asserts long-term supervision is not envisioned within the services provided by DSS and will intrude upon "Parents' rights to conduct their lives in as normal a manner as possible." Supervision by DSS has always been an intrusion into family life. Here, however, such intrusion is necessary, and hopefully, will lead to Parents' assumption of a normal home life. We are not persuaded that DSS is left with a "near impossible task" of regularly monitoring Child. DSS routinely engages in such monitoring. The mere fact that long-term supervision may be necessary is not sufficient to overcome the requirement that it is the child's best interest, not the convenience of the State, which is the paramount interest. S., V. & L.W., 398 N.W.2d at 139.
State admits "the goal of social services is to help the family correct identified problems within the home and keep the family intact." With the exception of sexual abuse therapy, Parents are addressing many of their parenting problems. Should *126 it develop that Parents overcome their problems, State is not precluded from petitioning the trial court to relieve DSS from its supervisory role. The trial court authorized DSS workers to "conduct as many announced and unannounced visits of [Parents'] home as the worker deems appropriate." State is not precluded from returning to the trial court, IF EVIDENCE WARRANTS, and again seeking to terminate Parents' rights to Child.
Although the trial court's order for protective supervision may be different from what this court may have ordered, we are not convinced that a mistake has been made. S.W., 428 N.W.2d at 525.
Affirmed.
WUEST and AMUNDSON, JJ., concur.
SABERS, J., concurs in part and dissents in part.
HENDERSON, J., concurs in result in part and dissents in part.
SABERS, Justice (concurring in part & dissenting in part).
Unlike the majority, I am convinced that "the trial court made a mistake and thereby abused its discretion when it determined it was in Child's best interests to return him to the care and custody of Parents."
The trial court improperly allowed Parents to relitigate the issue concerning their proven sexual abuse of Brother and Sister. These facts were previously decided. They were res judicata.
The trial court knew it was bound by the prior determination that sexual abuse did occur and that Parents were the perpetrators. The trial court even ordered the parties not to attack the previous findings of fact and conclusions of law. Despite that, the experts' testimony and the opinions based thereon directly contradicted those findings and conclusions. Even more surprising is the fact that the trial court accepted the opinions based on direct contradictions of the findings of fact and conclusions of law. Clearly, a mistake was made.[*]
The majority opinion concedes that Parents have never admitted they are perpetrators of sexual child abuse and have never sought counseling for their aberrant behavior and that the trial court heard testimony that before such counseling is effective, it is necessary for perpetrators to admit their acts and that repeat incidents of sexual abuse by Parents is not only possible, but is likely. While the State did not show Parents were sexually abusing Child, "[e]vidence as to the probability of future adequate care is competent and may serve as a basis for the termination of parental rights." In re M.B., 288 N.W.2d 773, 775 (S.D.1980) (citation omitted). "Due process requires a showing of a certain threshold of harm to justify termination, but does not mandate that a child be subjected to actual deprivation before such a determination is instituted. A termination proceeding is preventative as well as remedial." In re B.E., 287 N.W.2d 91, 95 (S.D.1979) (citations omitted). To satisfy substantive due process, clear and convincing evidence need only indicate that potential harm to the child may result in allowing the parent-child relationship to continue. See generally B.E., 287 N.W.2d at 95 (facts need only indicate by a clear preponderance of the evidence that potential harm to the child may result in allowing the parent-child relationship to continue).
The probability of future adequate care is negligible. As noted above, Parents have sexually abused their children in the past and repeat incidents of sexual abuse by Parents are likely. The trial court clearly abused its discretion. It is not in *127 Child's best interests to return him to the care and custody of Parents.
I would affirm Issue I. I would reverse and remand for a new trial on Issue II and not reach Issue III.
HENDERSON, Justice (concurring in result in part; dissenting in part).
As the child in question was returned to the parents' home, based upon, inter alia, testimony by the state's expert that the home was a safe place for the child, I agree with the majority writer on that aspect of our decision. State is bound by its own testimony. Lalley v. Safway Steel Scaffolds, Inc., 364 N.W.2d 139 (S.D.1985). As State's brief on page 11 expresses that "the DSS could not identify" a specific incident of abuse to J.A.H., my conclusion is augmented that the child was properly returned to the home. Thus, there was no trial error. Matter of A.H., 421 N.W.2d 71 (S.D.1988).
Trial court erred in finding that a ten-day-old infant, seized in a cafe, under an emergency order (where there was no emergency established) was either dependent or neglected. Res judicata is the base rationale for the holding of the trial court. As this is a different child, at a different time, and under different circumstances, res judicata is not applicable. Essentially, res judicata cannot apply here because the issues are different. As we have pointed out, the issues must be identical. Moe v. Moe, 496 N.W.2d 593 (S.D.1993); Raschke v. DeGraff, 81 S.D. 291, 134 N.W.2d 294 (1965). Experts, as an example, opined that significant constructive changes in the parents' demeanor and attitude had taken place. Said experts were Jacquie Kelley, pediatric nurse, and Lynn Goehring, psychologist. Trial court apparently took the position that it could rely, for proof, upon findings in a prior dependency and neglect proceeding. Though the prior proceedings may be considered by the trial court, they surely cannot be elevated to a res judicata stature. Older proceedings are simply not conclusive. Matter of R.Z.F., 284 N.W.2d 879 (S.D.1979). Therefore, I dissent on affirmance of a finding of dependency and neglect.
NOTES
[1] Mother's first child was with her first husband at this time.
[2] Summarily affirmed at In re D.N.H., 464 N.W.2d 642 (S.D.1990).
[3] State sought to terminate parental rights to Child asserting (1) he lacked proper parental care through the actions or omissions of his mother, father, or both; (2) the environment was injurious to his welfare; (3) he was threatened with substantial harm; or (4) he has been subjected to an environment conclusively proved by evidence of treatment towards older siblings to be wholly unfit and improper.
[4] That attorney also requested the trial court to appoint counsel for Parents. This was done and Parents' first attorney had no further involvement in these proceedings.
[5] Parents' rights to Brother and Sister were involuntarily terminated for (1) sexual abuse, consisting of fellatio and sexual intercourse between Parents and their children; (2) physical abuse, consisting of spanking with belts or other instruments; (3) neglect, particularly by failing or refusing to properly supervise the children, and by failing or refusing to intervene in the physical and sexual abuse perpetrated on the children by the other parent.
[6] Amendments to SDCL 26-8A-2 after these proceedings were brought are not relevant here.
[*] According to the majority opinion, while there may have been some inadmissible testimony regarding the issue of whether or not Parents sexually abused Brother and Sister, "State has not overcome the presumption that the trial court disregarded such testimony." According to Finding of Fact XXIV, however, "[b]ecause of the expert testimony now before the Court, it is difficult to state with certainty whether the prior sexual abuse took place." Clearly, (1) there was inadmissible testimony; (2) the trial court did not disregard such testimony; (3) the testimony was prejudicial and (4) the trial court abused its discretion.