2003 SD 88

**The PEOPLE of the State of South Dakota, In the Interest of D.T., Jr., Minor Child,**

**and**

**Concerning P.T and D.T., Sr., Respondents.**

**No. 22522.**

Supreme Court of South Dakota.

Considered on Briefs June 27, 2003.

Decided July 23, 2003.

Lawrence E. Long, Attorney General, Ann M. Holzhauser, Assistant Attorney General, Pierre, South Dakota, Attorneys for petitioner and appellee.

Scott B. Carlson, Minnehaha County, Public Defender's Office, Sioux Falls, South Dakota, Attorney for respondent and appellant, D.T., Sr.

PER CURIAM.

[¶ 1.] Father appeals from an adjudication of abuse and neglect and a dispositional order terminating his parental rights to his infant son D.T. Jr. (D.T.). Mother's parental rights were also terminated, but she has not appealed. We affirm.

## FACTS

[¶ 2.] On August 16, 2001, Mother gave birth to D.T. by caesarean section. After the birth, Mother was prescribed Darvocet [1] for pain. Two days after D.T. was born, Mother fell asleep in her hospital bed while D.T. was lying on her chest and woke to find D.T. on the floor. The fall resulted in two skull fractures and a brain hemorrhage.[2] Father was in the hospital room when the child fell, but he was sleeping. He stated that he awoke when he heard either his wife or the child crying after the fall. One nursing report in the record noted that Father smelled of alcohol that evening, but that he did not appear intoxicated.

[¶ 3.] Hospital personnel informed the Department of Social Services (DSS) of

---

1. Darvocet is a pain reliever with codeine. One side effect of the drug can be drowsiness.

2. Although Mother was still taking Darvocet at the time the baby fell, it should be noted that Mother had been warned of the danger of sleeping with the infant in her bed. Before the child was born, a DSS worker visited with

Mother twice about the fact that Parents had not obtained a crib for the baby. The worker testified that she warned mother about the danger of sleeping with an infant in the bed, but Mother insisted that just as her other children had slept with her, so would D.T.

the fall and a police officer was called to the hospital. Based on parents' history of committing child abuse and neglect, the child was taken into protective custody. DSS initiated abuse and neglect proceedings against Mother and Father.

[¶ 4.] The trial court found the child abused and neglected and terminated parental rights. Father appeals raising three issues:

> Whether there was sufficient evidence that D.T. was abused and neglected.

> Whether the trial court erred in using the clear and convincing evidentiary standard to find that termination of Father's parental rights was in the child's best interest.

> Whether the trial court erred in finding that termination of Father's parental rights was the least restrictive alternative.

### STANDARD OF REVIEW

[¶ 5.] The State must prove a child is abused and neglected by clear and convincing evidence. *Matter of J.A.H.*, 502 N.W.2d 120, 123 (S.D.1993) (additional citations omitted). The trial court's findings of fact will not be set aside unless they are clearly erroneous and "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Matter of D.H.*, 354 N.W.2d 185, 188 (S.D.1984) (additional citations omitted).

### ISSUE ONE

[¶ 6.] **Whether there was sufficient evidence that D.T. was abused and neglected.**

[¶ 7.] Upon the State's motion, the trial court took judicial notice of the fact that both Mother and Father had their rights to other children terminated for abuse and neglect. The court found that Mother had her rights to two daughters terminated on March 26, 1996 and had her rights to her son, C.S., terminated on January 20, 2000. Father has another son who is approximately seventeen years old with whom Father has no contact. Mother and Father also had their rights terminated to their son, C.T.[3] on August 14, 2001—two days before D.T. was born. In its findings of fact from the adjudicatory hearing, the court found that "the prior cases show a pattern of abuse and neglect of children by these parents and thus judicial notice of the prior cases is appropriate." In its conclusions of law, the court stated, "[b]ased on the prior abuse and neglect cases and the pattern of abuse and neglect demonstrated by both parents in those cases, D.T., Jr., is an abused and neglected child[.]"

[¶ 8.] The trial court conceded in its memorandum opinion that, "the actions of [Parents] at the hospital ... would not be sufficient to support a finding of abuse and neglect by clear and convincing evidence." It is undisputed that the child was adjudicated abused and neglected based on the history of abuse and neglect demonstrated by parents toward their other children. Father argues that this was error and urges reversal.

[¶ 9.] Father asserts that the legislature did not intend to allow courts to take judicial notice of prior terminations during the adjudicatory phase of the proceedings. In support of this assertion, Father cites SDCL 26–8A–26.1 and argues that it applies only to the dispositional phase of an abuse and neglect proceeding. SDCL 26–8A–26.1 provides in part that a court may find good cause exists for termination of parental rights when the parent "[h]as had parental rights to another child involuntarily terminated by a prior legal proceed-

---

**3.** This Court summarily affirmed this termination in Interest of C.T. on May 21, 2002.

ing." SDCL 26–8A–26.1 (5). Father is correct when he asserts that this statute applies only to the disposition phase of the proceedings. However, this is insufficient to show the trial court was not permitted to take judicial notice of the prior terminations in the adjudicatory phase. There is nothing in the statute that indicates that it was intended to limit the trial court's discretion in determining whether and when to take judicial notice of prior terminations. Father provides no other statutory authority for his assertion regarding legislative intent nor has any authority been found.

[¶ 10.] Father's assertion that case law does not permit the trial court to take judicial notice of prior terminations at the adjudicatory phase is equally unavailing. It is well settled that trial courts are permitted to take judicial notice of prior abuse and neglect adjudications. *See e.g., J.A.H.*, 502 N.W.2d at 123; *Matter of L.B.*, 416 N.W.2d 598, 599 (S.D.1987); *Matter of R.Z.F.*, 284 N.W.2d 879, 881 (S.D.1979); *In re K.D.E.*, 87 S.D. 501, 506, 210 N.W.2d 907, 910 (S.D.1973). In *J.A.H.*, this Court reiterated, "[i]t is appropriate for the trial court to take judicial notice of earlier findings as to abuse and neglect." *J.A.H.*, 502 N.W.2d at 123 (internal citations omitted). Father argues that our holdings are strictly limited so that 1) the trial court may only take such notice at the dispositional phase; and 2) there must be specific incidents of physical or sexual abuse perpetrated upon D.T. in order for the cases to apply. Father relies on language in *K.D.E.* which provides,

> [w]here the trial court has determined that neglect or abuse exists in regard to one child, it is within its discretion to determine the likelihood of abuse of other children in the same family. If such is likely to exist, then the court has the right to terminate any parental ties ... we cannot allow the health, safety or life

of a young child to be placed back into an environment conclusively proved, as evidenced by the treatment of her brother (the prior adjudication), to be wholly unfit and improper.

*K.D.E.*, 87 S.D. at 506, 210 N.W.2d at 910 (internal citations omitted). Father argues that because he was not asking for his son to be "placed back" with him at the adjudicatory hearing, the trial court erred in taking notice. The language and the facts of this Court's holding in *J.A.H.*, which was decided twenty years after *K.D.E.*, make it clear that trial courts are permitted to take judicial notice of prior findings as to abuse and neglect at the adjudicatory stage of the proceedings. In *J.A.H.*, the child was taken from the mother shortly after birth and the State initiated abuse and neglect proceedings. *J.A.H.*, 502 N.W.2d at 122. On State's motion, the trial court took judicial notice of prior findings regarding the child's siblings at the adjudicatory hearing. *Id.* This Court upheld the adjudication of abuse and neglect and stated,

> [p]rior findings are relevant to the determination of whether abuse of other children in this same family is likely and this determination is within the discretion of the trial court.

*J.A.H.*, 502 N.W.2d at 123 (additional citations omitted).

[¶ 11.] Father's assertion that it was necessary to show specific instances of abuse against D.T. is unsupported by this Court's precedent. This Court has upheld findings of abuse and neglect predicated upon evidence indicating potential harm to the child. *See e.g., Interest of T.G.*, 1998 SD 54, ¶ 24, 578 N.W.2d 921, 924. Trial courts need not make a finding of specific instances of abuse before adjudicating a child abused and neglected. *J.A.H.*, 502 N.W.2d at 123.

[¶ 12.] Finally, if the Court were to accept Father's argument that judicial no-

tice of prior terminations may only be taken during the dispositional phase, the best interest of the children involved would not be served. Once a trial court determines that a child is not abused or neglected, the proceedings must end, and the child must be returned to the parents. If trial courts are not permitted to take notice of prior terminations, children will be returned to homes regardless of clear and convincing evidence from prior adjudications that parents are abusive and/or neglectful. This result would be untenable given the requirement that courts construe the child protection statutes liberally for the purpose of protecting children from abuse or neglect. *See e.g. Matter of T.A.,* 2003 SD 56, ¶ 18, 663 N.W.2d 225, 232; *D.H.,* 354 N.W.2d at 191 (additional citation omitted).

[¶ 13.] The trial court did not err in taking judicial notice of the prior terminations at the adjudicatory hearing.

### ISSUE TWO

[¶ 14.] **Whether the trial court erred in using the clear and convincing evidentiary standard to determine that termination of Father's parental rights was in the child's best interest.**

[¶ 15.] Termination of parental rights is proper only when the court finds by clear and convincing evidence that termination is the least restrictive alternative in keeping with the child's best interest. SDCL 26–8A–27. Father argues that the court erred in using the clear and convincing standard of proof because this case involves the Indian Child Welfare Act (ICWA) and the evidentiary standard is proof beyond a reasonable doubt. 25 U.S.C. § 1912(f). Father also argues that the State failed to meet the requirement of providing an expert to testify. *Id.*

[¶ 16.] ICWA applies only when the child involved is an "Indian child." 25 U.S.C. 1903(4) defines "Indian child" as:

any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe *and* is the biological child of a member of an Indian tribe

(emphasis supplied). The record contains a letter from the ICWA Director for the Crow Creek Sioux Tribe informing DSS that D.T. is not eligible for enrollment in the tribe. The applicability of ICWA is determined by eligibility for *membership* rather than enrollment with the tribe. Therefore, a statement that the child is not eligible for enrollment is insufficient evidence to find that ICWA does not apply unless the tribe's constitution and bylaws equate membership with enrollment. Nonetheless, D.T. does not meet the statutory criteria. D.T. is not a member of a tribe and therefore subsection (a) does not apply. There is no evidence that either of the parents are members of a tribe and therefore subsection (b) does not apply. Furthermore, [i]t is incumbent upon the party asserting applicability of ICWA to prove the child meets the criteria under ICWA. *In re A.S.,* 2000 SD 94, ¶ 13, 614 N.W.2d 383, 385 (citing *In re J.D.B.,* 584 N.W.2d 577, 582 (Iowa Ct.App.1998); *In re A.M.,* 235 Neb. 506, 455 N.W.2d 572, 573 (1990)). Father failed to come forward either here or before the trial court with evidence that D.T. meets the criteria. The trial court did not err in finding ICWA inapplicable or in using the clear and convincing evidentiary standard.

### ISSUE THREE

[¶ 17.] **Whether the trial court erred in finding that termination of Father's parental rights was the least restrictive alternative.**

[¶ 18.] The trial court may terminate parental rights if it is in the best interest of the child and if termination is

the least restrictive alternative available. SDCL 26–8A–26. The best interest of the child must be viewed from the child's, rather than the parents, perspective. *Interest of E.D.J.*, 499 N.W.2d 130, 135 (S.D. 1993) (additional citations omitted). We reverse only if the trial court was clearly erroneous in finding that termination was the least restrictive alternative. *A.S.*, 2000 SD 94 at ¶ 19, 614 N.W.2d at 386 (citing *In re J.Y.*, 502 N.W.2d 860, 862 (S.D.1993)).

[¶ 19.] Father argues that the trial court utilized the wrong standard for determining whether there was a less restrictive alternative because ICWA should apply. As noted above, the argument regarding ICWA is without merit.

[¶ 20.] These facts create a close question. While courts should be slow to terminate parental rights based solely on previous terminations, the child's best interest must always prevail and there is a legitimate concern with preventing abuse. *Interest of S.A.H.*, 537 N.W.2d 1, 5 (S.D. 1995) (stating, "[t]ermination proceedings are preventative as well as remedial") (cit-

ing *Interest of A.R.P.*, 519 N.W.2d 56, 61 (S.D.1994); *Matter of B.E.*, 287 N.W.2d 91, 95 (S.D.1979)). It appears inevitable that if D.T. were returned to his parents' home, he would be abused and neglected. There is little about the parents' home, relationship, parenting abilities and abusive and neglectful tendencies that have changed since the first child was removed in 1996.[4]

[¶ 21.] Father asserts that the evidence at the dispositional hearing showed that he had a good job, that he lived in an appropriate home containing the necessities for a baby and that he had no alcohol or drug problem. However, testimony at the dispositional hearing indicated that Father lacked parenting skills and that it would take years for him to develop the necessary skills to raise a child. Even if Father would faithfully attend parenting classes— an assumption not supported by his previous behavior—there is still doubt that he will ever be able to effectively parent a child.[5]

[¶ 22.] Father continues to reside with Mother, who had her rights terminated to

4. The trial court found that the same problems persisted in Parents' lives:

   1) inappropriate or no housing, insufficient finances, inappropriate care of the children and domestic abuse;

   2) even with intensive services, Mother's parenting skills declined prior to the 1996 termination;

   3) Mother and Father were married but lived together sporadically and Father appeared at several meetings with black eyes inflicted by Mother;

   4) psychological evaluations of Parents indicate it would take years of intensive individual and family therapy before either Parent could effectively parent a child.

5. The findings of fact from the dispositional hearing indicate:

   1) the first time Parents attended parenting classes, the classes had to terminate early due to domestic violence issues between Parents;

   2) the second time they attended parenting classes, they completed the classes but the instructor testified;

     a) Parents could not understand the material even when provided individual instruction;

     b) Parents displayed difficulty with hygiene, anger control, nutrition and knowing when a child should sleep;

     c) Mother indicated that if another child should take one of her children's toys, she would tell the child to make sure no one was looking and then hit the other child;

     d) apparently both parents were physically abused as children.

   3) Both parents attended the Rape and Domestic Abuse Center and testimony indicated:

     a) Parents seemed unwilling to make any changes;

     b) Mother admitted hitting Father after she had been in the program for some time;

     c) neither parent appeared to have any insight into their problems;

all of her surviving children and who was unable to effectively parent D.T. or meet his psychological needs. Father knows Mother has violent and abusive tendencies, and there is a long and continuing history of domestic violence between Mother and Father. In fact, just days before the final hearing in this case, law enforcement was dispatched to parents' home after Father "head-butted" Mother, pushed her, tackled and choked her and punched her until she kneed him in the groin and got away from him. Father was arrested. Despite continuing problems and consistent recommendations by DSS, Father persists in denying that he and Mother need to attend counseling. This Court has noted that where parents are living together, termination of the rights of only one parent serves no purpose because the child would still be living in a potentially injurious environment. *Matter of L.M.T.* 305 N.W.2d 399, 403 (S.D.1981). Even assuming Father did remove himself from this environment, his inability to recognize his problems, coupled with his inability to effectively parent, preclude the possibility of placing the child with him.

[¶ 23.] Although substantial services were offered to both parents, they consistently failed to follow through. We will not force the child to wait for his parents to acquire parenting skills that may never develop. *Matter of J.Y.,* 502 N.W.2d 860, 861 (S.D.1993) (citing *Interest of A.D.,* 416 N.W.2d 264, 268 (S.D.1987)). The trial court was bound to consider the best interest of the child. Placing the

child with Father would expose him to the abuse perpetrated by parents on the other children, and would prevent the child from receiving proper parental care. In the best interest of the child, there was no less restrictive alternative. The child needed to be placed in a stable, nurturing environment which Father cannot provide. Anything short of termination would deny the child the stability and care he needs.

[¶ 24.] Father has failed to show that the trial court erred in finding abuse and neglect and terminating his parental rights. The trial court is affirmed.

[¶ 25.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.

d) counselors had poor prognosis for both parents;
e) Father only attended because DSS told him to and he did not complete the classes;
f) Father displayed problems with anger control, failed to take responsibility for his actions and was unable to identify inappropriate behavior;

g) Mother completed classes but was referred to further counseling due to issues with anger control and inability to implement the skills she had learned;
h) Mother did not receive the additional counseling.